## WILL JACOBS V. THE STATE.
*No. 6642.    Decided June 26.*

1.   Practice—Evidence—Bill of Exceptions to the admission of evidence is incomplete, and is entitled to no consideration by this court, unless it shows not merely that the testimony objected to was offered, but that it went to the jury as evidence. Waiving the question of the sufficiency of the bill of exceptions in this instance, the court holds that the official character of the deceased being merely an incidental or collateral issue in the case, parol evidence thereof was properly admitted.

2.   Same.—As tending to show the defendant's motive in committing the homicide,

and to explain the motives and conduct of the officers and posse that were seeking to arrest the defendant, and to throw light upon the whole transaction, the trial court did not err in admitting in evidence the records of the District Court of Frio County to show that an indictment for murder was pending in the said court against the defendant.

3. **Same.**—For the reasons enumerated in the foregoing ruling, and for the further reason that it tended to show that in attempting to arrest the defendant the officers and posse were acting by authority of law, and that said attempted arrest was legal, the trial court properly permitted the sheriff of Milam County to testify that about a week before the homicide he received a letter from a deputy sheriff of Lee County, stating that the defendant and one Johnson were in Milam County armed with rifles and pistols; and also that he obtained like information from one S., a credible person.

4. **Same.**—As competent to show the legality of the attempted arrest of the defendant the trial court properly admitted the testimony of the officer in charge of the posse, and of D., to the effect that about an hour before the attempted arrest D. informed the said officer that within the preceding hour he had seen the defendant carrying a pistol on his person.

5. **Same.**—The defense objected to proof adduced by the State to the effect that one Johnson, who was shown to have been with the defendant at the house of B. (where the homicide occurred), and to have been constantly in company with the defendant until about a week before the homicide, habitually carried a rifle and a pistol on his person when riding about the neighborhood of B.'s house. *Held*, that the evidence was properly admitted, it being competent to show that Johnson was aiding the defendant to evade arrest, and that he acted together with defendant in openly and continuously defying the law and its officers. Moreover, it was competent to explain the conduct of the officers in attempting the defendant's arrest, and to show that in attempting the arrest in the manner they did, having good reason to believe that in resisting arrest defendant would be aided by Johnson, they acted within the limits of prudence and of the law.

6. **Practice.**—Bill of **Exceptions** reserved to the rejection of testimony will not be considered by the appellate court if too indefinite in the recital of facts to enable the court to understand the facts upon which the correctness or error of the ruling complained of depends.

7. **Implied Malice—Charge of the Court.**—See the statement of the case for a charge of the court upon implied malice *held* correct, the words "considerable provocation," as used in said charge, in connection with the context, being equivalent to the words "adequate cause."

8. **Same—Arrest Without Warrant.**—Article 322 of the Penal Code, which is a special provision and is not controlled by other statutes relating to arrests, expressly provides that a person violating the law by unlawfully carrying arms may be arrested by a peace officer without warrant, upon his own knowledge or upon information of some credible person. This statute must be construed to authorize the peace officer to arrest the offender without warrant, upon information of a credible person, although the offender may be in a distant part of the county at the time of the information, and although the arrest may not be immediately made or attempted. A charge of the court to this effect was not erroneous.

9. **Verdict** reads as follows: "We the jury find the defendant, William Jacobs, gilty of murder in the second degree, and assess his punishment at confinement in the State Penitentiary for the term of ten years." *Held*, sufficient.

Appeal from the District Court of Milam. Tried below before Hon. J. N. Henderson.

This conviction was in the second degree for the murder of G. L. Pool,

and the penalty assessed by the verdict was a term of ten years in the penitentiary.

Stated in brief, the evidence for the State shows that, acting under the orders of the sheriff of Milam County, Deputy Sheriffs J. H. Bickett and G. L. Pool, with a posse of five men, went to the house of Ira Bounds to arrest the defendant for unlawfully carrying a pistol. They reached Bounds's place after night on the 7th day of April, 1887. Meeting Bounds at his yard fence, Bickett asked him if the defendant was in the house. After some hesitation Bounds replied that he, defendant, was at the horse lot. He repeated that statement two or three times, when Bickett ordered his posse to dismount and go into the house to see if defendant was in there. Bickett advanced towards the door from the outside, and saw a man advancing towards the door from the inside. He called to that man, " Jacobs, surrender, and you will not be hurt. We are officers of the law." The man replied, " I surrender to no set of men in the dark." Instantly a shot was fired from the inside of the house, and Pool, who was standing under a tree in front of the house, groaned and fell, discharging his pistol as he went down. Defendant then came out of the house, and he and Bickett exchanged several shots, Bickett retreating to the corner of the house when he had emptied his pistol. Defendant then escaped. Pool expired about forty minutes after he was shot.

Sheriff Lewis testified for the State that a letter received by him from Tom Pryor, deputy sheriff of Lee County, informed him that defendant and a man named Johnson were riding through the Bounds neighborhood armed with pistols and winchester rifles. Old Man Spradley, whom the witness knew to be a credible person, on the day before the homicide told witness that defendant and Johnson were riding through the Bounds neighborhood armed with pistols and winchesters. He knew that he had authority to arrest defendant without warrant for carrying a pistol, and accordingly on the fatal morning directed Bickett to go to the Bounds neighborhood, investigate the matter, and if he found the report to be true to arrest the defendant. At the same time the witness had information that the defendant was wanted in Frio County for murder. He thought there was a capias in his office for the arrest of the defendant for that murder, but he was not positive. He wanted the defendant for that murder, but directed Bickett to make the arrest for carrying the pistol.

Bickett corroborated the sheriff as to the directions given him about the arrest of the defendant for carrying the pistol. He testified also that Ed Dance, one of his posse, about an hour before the killing told him that within the preceding hour he saw the defendant with a pistol on his person.

The witnesses for the defense who were present at the time of the trag-

edy denied that when Bickett summoned the defendant to surrender he announced that he and his posse were officers of the law. They denied that Bounds attempted to deceive Bickett by telling him that defendant was at the horse lot, but declared that, on the contrary, when Bickett directed him to call defendant from the house Bounds replied, "Call him yourself." They also stated that Bickett, ordering defendant a second time to come out of the house, said, "You had as well come out, for we are going to have you." Each of the said witnesses declared that the first shot was fired by a member of Bickett's posse, and that Pool was killed by the second shot, which was fired from the inside of the house. It was also shown that the man Johnson stayed at Bounds's house with defendant for some time prior to the homicide, leaving there about a week before the fatal day. Bounds testified that Johnson had a winchester when he came, and that defendant had a pistol. When he left he and defendant exchanged weapons. Defendant and Johnson did not stay on Bounds's place all of the time during Johnson's stay in the neighborhood, and Bounds testified that he did not know where they were when not at his house.

The charge of the court referred to in the seventh head note reads as follows: "Implied malice is an inference or conclusion founded upon particular facts and circumstances proved, and from which the malice is inferred. The law implies malice from the commission of any unlawful or cruel act. Hence, when a homicide is committed without any or without considerable provocation, the law implies malice. In like manner, if a homicide be committed under the immediate influence of sudden anger, rage, resentment, terror, or excitemont, rendering the mind incapable of cool reflection, the law will imply malice in the absence of any adequate cause to reduce the offense to manslaughter. And when a homicide is shown to have been committed, the killing is not shown to have been done upon express malice, and the evidence fails to show that the act was done upon express malice, and the evidence fails to show that the act was done under circumstances to mitigate or reduce the killing to manslaughter, or to excuse or justify the deed, the law infers that the killing was done upon malice; and the malice is implied malice."

*J. D. Morrison, R. H. Hudson, T. S. Henderson,* and *E. L. Antony,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—Bill of exception No. 2 is as follows: "Be it remembered that on the trial of the above entitled cause the State *offered to prove* the following facts, viz., by J. H. Bickett, a witness for the State, that at the time defendant is charged to have killed G. L. Pool, he, said

Bickett, and said Pool, were deputy sheriffs of Milam County, to which the counsel for the defendant objected for the following reason, viz.: Because the law directed how deputy sheriffs could be appointed, and required a record thereof to be kept in the office of the county clerk, and required said appointment to be in writing, and required the appointee to take the constitutional oath, and that said record and said original appointment were the best evidence of the official character of deputy sheriffs, and the court overruled the objections; the defendant excepted to said ruling, and herewith tenders his bill of exception," etc.

It will be observed that the bill of exceptions is incomplete, in that it does not state that the testimony objected to was admitted in evidence before the jury. Unless it was admitted in evidence, certainly no material error was committed in overruling the objections to it. A bill of exceptions must be so full and certain in its statements that in and of itself, it will disclose all that is necessary to manifest the supposed error. It must sufficiently set out the proceedings and attendant circumstances below to enable this court to know certainly that error was committed. Willson's Crim. Stats., sec. 2368. When the exception is to the admission of testimony it must not only show that the testimony was *offered*, but must further show that it went before the jury as evidence. Burke v. The State, 25 Texas Ct. App., 172. In considering a bill of exceptions to the admisssion of evidence it must appear from the bill itself that the testimony objected to went before the jury. We can not look to the statement of facts to determine that fact. We are not called upon therefore to decide the question sought to be presented by bill of exception No. 2; but if we were, we should hold that there was no error in admitting the testimony objected to. The official character of Bickett and Pool was an incidental, collateral issue, and was not an issue directly between said officers and the public. Such being the case, parol evidence was competent to prove their official character. Woodson v. The State, 24 Texas Ct. App., 153.

2. Bill of exception No. 3 is incomplete and defective in the same particular as bill No. 2. It recites that the State offered to prove by a record of the District Court of Frio County that the defendant, at the time he killed Pool, was charged by indictment in the District Court of Frio County with murder, and said record, together with defendant's objections thereto, are set forth in the bill. But it is not shown by the bill that said record was read in evidence before the jury. But here again, were we to consider the bill sufficient, we would hold that said record was competent evidence. It established a circumstance which tended to show defendant's motive in committing the homicide; which tended to show that he was a fugitive from justice, who had resolved to evade and resist arrest for a capital crime at any and all hazards regardless of consequences, and regardless of whether his arrest should be attempted legally or illegally.

It furthermore tended to explain the conduct and motives of the officers and posse that were seeking to arrest the defendant, and to throw light upon the whole transaction. It was in fact a part of the *res gestæ* of the homicide.

3. For the reasons above stated it was not error to admit the testimony set forth in bill of exception No. 4. Said testimony was also competent for the purpose of showing that in attempting to arrest the defendant the officers and posse were acting by authority of law, and that said attempted arrest was legal.

4. Bill of exception No. 5 does not state that the testimony objected to went before the jury, and is therefore defective. But we think the testimony was competent to show that the attempted arrest of the defendant was a legal one.

5. . Bill of exception No. 6 does not show that the testimony objected to went before the jury, and we shall not therefore consider it.

6. Bill of exception No. 7 is not maintainable. The testimony objected to was competent to show that in evading arrest, and in violating the law by carrying arms, the defendant was aided and supported by Johnson, and that the two acting together, were openly and continuously defying the law and its officers, to the terror of the citizens of the neighborhood. And further, it was competent to explain the conduct of the officers and posse in attempting defendant's arrest, and to show that said officers and posse had good reason to believe that defendant's arrest would be resisted by him and said Johnson, and that therefore said officers and posse, in attempting said arrest in the manner they did, acted within the limits of prudence and of the law.

7. Bills of exception 8, 9, and 10 are to the action of the court in rejecting certain testimony therein set forth offered by the defendant. Each of these bills is too defective to be considered. They do not recite facts which would enable this court to fully understand and know all the facts on which the correctness or error of the rulings complained of depend. Livar v. The State, 26 Texas Ct. App., 115.

8. We come now to a consideration of the charge of the court, to which the defendant reserved several exceptions and here insists upon the same as cause for reversal:

(1) When considered as a whole we see no error in paragraph 5 of the charge, defining and explaining "implied malice." The words "considerable provocation" in said paragraph, in the connection in which they are used, convey the same meaning as the words "adequate cause;" and besides the court in said paragraph was defining implied malice and not manslaughter, and defined it we think correctly.

(2) That portion of the charge which explains the law relative to the rights, duties, and responsibilities of parties attempting an arrest, and of the party attempted to be arrested, respectively, is not we think ob--

noxious to the objections urged against it.    It is expressly provided by the Code that a person violating the law by unlawfully carrying arms may be arrested without warrant by any peace officer, upon his own knowledge or upon information of some credible person; and it is made a penal offense for a peace officer to fail or refuse in such case to make the arrest. Penal Code, art. 322.    The court gave this law to the jury, and the defendant excepted thereto, contending that said provision of the statute contemplates an arrest in *flagrante dilicto;* that to authorize such arrest the officer must be present with the offender at the very time of the commission of the offense; that the offender must be escaping, and that there is no time or opportunity to obtain a warrant for his arrest.    We do not so understand said provision of the statute.    We understand it to authorize an arrest without warrant, not only when the offense is being committed in the presence and within the knowledge of the officer, but also when the officer is informed by a credible person that the offense is being committed, although the offender at the time of such information may be in a distant portion of the county, and although the arrest may not be immediately attempted.    This is a special provision and is not controlled by other statutes relating to arrests.    It does not prescribe the *time* within which the arrest shall be made or attempted.    It does not require that a warrant of arrest shall be obtained where there is time and opportunity to obtain it.    We think it authorizes an arrest without warrant upon the information of a credible person that a violation of articles 318 or 320 of the Penal Code is being committed, although the person committing such violation is not at the time present or even within the reach of the officer, and although there may be time and opportunity to obtain a warrant of arrest.    We do not think this provision of the Code, construed as we construe it, is in conflict with section 9 of the Bill of Rights, or of any other provision of the Constitution.

(3)   We have, as far as we are capable of doing, carefully considered every objection made to the charge of the court.    We fail to find any error in it of which the defendant can complain.    If erroneous in any particular the error is in the defendant's favor.    It is obvious that the learned trial judge prepared his charge with great caution and with a view of giving the defendant the benefit of every phase of the case favorable to him presented by the evidence.    We think, taking the charge as a whole, that it is unobjectionable on the part of the defendant, and that none of the exceptions made to it are well grounded.

9.    There is no merit in the objection made to the verdict as appears by an inspection of the original sent up in the transcript.

Finding no error in the proceedings and conviction the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.