# JOHN C. DUNCAN v. STATE.

No. A-2090.   Opinion Filed December 8, 1914.

(144 Pac. 629.)

1.   **SEARCHES AND SEIZURES—Right to Search Private Residence.**
(a)   Under the provisions of the prohibitory law in this state
as expressed in section 3616, Rev. Laws 1910, no officer is au-
thorized to search a private residence occupied as such, or any
portion thereof, unless it or some part of it be used as a store,
shop, hotel, boarding house, or place of storage, or unless such
residence is a place of public resort.
(b)   No magistrate in this state has the power to issue a
search warrant to search the private residence of any inhabitant
of the state, unless it is made clearly to appear that such private
residence comes within the exceptions stated in section 3616, Rev.
Laws 1910.
(c)   No officer has a lawful right to search any private
residence, even though he possesses a search warrant issued by a
magistrate, unless the conditions, or some one of them, referred
to in section 3616, exist in the habitation at the time the search
is to be made.

2.   **SAME.**   (a)   It is the law of the land that no man, however
high the office he holds, is permitted to ruthlessly invade the
sacred rights of any home, however humble, unless he is clearly
within the statutory provisions.
(b)   The home of the American citizen is his castle supreme,
and he who dares to invade the sanctity thereof does so at his
peril.

3.   **SHERIFFS AND CONSTABLES—Unlawful Search—Invalid War-
rant.**   (a) A search warrant once served cannot be further resorted
to for the purpose of additional searches.   An attempt to make
a second search on a warrant once served, even though valid
originally, would place the officer attempting the search in the
attitude of a trespasser.
(b)   Under the facts disclosed by the record in the case at
bar, the search warrant was wrongfully issued and therefore void.
It would have afforded no protection or justification to any
officer entering the premises at any time.

4.   **SAME—Execution of Search Warrant—Subsequent Effectiveness.**
The following instructions given by the trial court is held to be
a correct statement of the law:   "You are instructed that after
a search warrant has been executed and the property and things
therein described have been seized thereunder, its office has
been performed and a lawful search cannot again be made there-
under."

5.   **HOMICIDE—Appeal—Harmless Error—Instruction.**   (a)   An as-
signment of error, based upon an instruction of the court bear-
ing on the question of the guilt or innocence of the person on

trial of murder, is of no avail when the jury return a verdict finding such person guilty of manslaughter and not of murder.
(b)   For an instruction complained of, but which is held correct, see opinion.

6.   **SAME—Murder—Sufficiency of Evidence.** For facts which in the opinion of the court are sufficient to justify a conviction of murder, see opinion.

7.   **APPEAL—Harmless Error—Instructions.** An instruction of the court which, taken as a whole, states a rule of law more favorable to the accused than he is entitled to receive, although subject to criticism in some respects, if free from fundamental error, will not ordinarily justify a reversal.

8.   **TRIAL—Refusal of Instructions.** It is not error for the court to refuse to give instructions which are not applicable to the facts disclosed by the record and do not contain correct statements of the principles of law applicable to the issues on trial.

(Syllabus by the Court.)

*Appeal from District Court, Washington County;*
*R. H. Hudson, Judge.*

John C. Duncan was convicted of manslaughter, and he appeals.   Affirmed.

*J. R. Charlton,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J.   The plaintiff in error, John C. Duncan, was tried at the March, 1913, term of the district court of Washington county on a charge of the murder of Dallas Alexander, and convicted of manslaughter in the first degree.   His punishment was fixed at imprisonment in the state penitentiary for a period of ten years.

The homicide occurred at Ochelata in Washington county on the 6th day of August, 1912, which was the day upon which the general primary election was held in that year.   The deceased was a man about 65 years of age, and had been engaged in the cattle business at Ochelata.   The wife of the plaintiff in error was a candidate before that primary, for the nomination as a party candidate for county superintendent of public instruction of Washington county.   It appears that the deceased was actively opposing her nomination.   The night before the election a conference was held among the friends of Mrs. Dun-

can at the store of one Fuller in the town of Ochelata, at which conference the plaintiff in error was present. Plans were laid for the purpose of counteracting the opposition to Mrs. Duncan's candidacy. Alexander's name was mentioned at the conference as one of her opponents. The plaintiff in error made a statement to the effect that he would take care of Alexander. About 9 o'clock on the morning of the election the plaintiff in error procured a search warrant from the local justice of the peace to search the deceased's residence for intoxicating liquor. He did not make the search immediately after procuring the warrant, but did search the premises about noon, and secured one quart of whisky, which he displayed to bystanders, and afterwards destroyed the same. About 5 o'clock in the afternoon the plaintiff in error again attempted to search Alexander's house by virtue of the same warrant he had served in the forenoon. The deceased resisted the search, contending that the plaintiff in error had no further authority to search his premises under the warrant. In his effort to prevent the search the deceased took hold of plaintiff in error and shook him around considerably. The plaintiff in error, on account of this action, placed the deceased under arrest for, as he says in his testimony, resisting an officer of the law. In making this arrest he drew a revolver. The deceased finally subsided. By use of force the plaintiff in error took the deceased out of the house and started down toward the office of the mayor. He had gone some little distance, it appears, when the deceased put his hands in his pocket in an attempt to pull out his pistol. The testimony of witnesses conflicts as to just what was done.

The witnesses on behalf of the state testified that the deceased said, "John Duncan, you have gone far enough," or something of that import, and then pulled out his revolver. The plaintiff in error stepped a short distance ahead of deceased and grasped him by the wrist of the hand, in which he held the pistol. At the same time plaintiff in error drew his own pistol, and immediately thereafter two shots were fired, almost simultaneously, and shortly thereafter other shots were fired to the number of five or six.

The plaintiff in error testified that the deceased pulled out his pistol before he knew anything about it, and somebody across the street yelled, "Look out, he has got a pistol!" and he seized the deceased by the left hand, in which he was holding the pistol, to prevent him from shooting, and said "Don't do that!" but the deceased fired immediately, and the bullet struck him in the upper part of the left arm. At the time of this shot, he, the plaintiff in error, was pulling his pistol out of his pocket, and he immediately fired a shot at deceased, the bullet taking effect in the abdomen and passing out through the spinal column. Other shots were fired by both parties; at least one more shot was fired by plaintiff in error, which entered the left side of the deceased and passed through his body. Two or three more shots were fired by deceased, one of which struck the plaintiff in error in the hand; another in the left arm. There was also a bullet wound in the left hip of the plaintiff in error.

Some of the witnesses testified that the deceased fired three shots; others, four. There were only three empty shells, however, found in his pistol. There was evidence of ill feeling on the part of the combatants on account of the election being held at the time, and it was the theory of the state on the trial of this cause in the court below that the plaintiff in error, with malice in his heart, went to the home of deceased to search it, in order to provoke a difficulty with him and give the plaintiff in error a pretext for killing him. It appears that the plaintiff in error knew the deceased as a man who kept whisky in his home for his own use, and that he did not sell it, and that his home was not a place where people congregated for drinking intoxicating liquor.

The theory of the state also appeared to be that the arrest attempted by the plaintiff in error was unlawful; that he had no authority to search the premises or to apply for the said warrant, and that his action in attempting to make a second search amounted to an assault and an unlawful entry to the home of deceased which he, the deceased, had a right to resist; that the plaintiff in error knew that the deadly weapon he used in making the assault and in attempting the arrest gave the deceased the

right to resist with similar force, and the plaintiff in error's right of self-defense under the circumstances did not attach until he had in good faith withdrawn from the conflict that was occasioned by his own unlawful conduct in attempting the search and unlawful arrest. It was the theory of the defense in the trial court, as disclosed by the record, that plaintiff in error had a right to search the premises with or without a search warrant, and that his act in placing deceased under arrest was lawful, and that the assault made on him by deceased was felonious and one which he had a right to defend against without withdrawal.

There is no contention on the part of counsel that the verdict is contrary to the evidence. Their contentions are all based upon alleged errors of law.

This homicide was one of many that have occurred under somewhat similar circumstances in Oklahoma. The plaintiff in error was wholly in the wrong for two reasons: In the first place, he was not an officer of the law, and had no right to serve process on the pretense of being an officer. Second, the warrant he attempted to act under was void. The office of deputy enforcement officer was never created by the Legislature in this state. It was never the purpose of the law-making power to authorize a number of irresponsible individuals, or responsible individuals, for that matter, to act as law enforcement agents without any responsibility whatever. The sheriffs and constables elected by the people are required to give bond for the proper performance of their duties, upon which bonds the citizenship of this state or any member thereof who is deprived of any legal right can recover in damages from the principal and bondsmen. No sheriff of this state is entitled to search the home or private residence of any citizen without a warrant issued upon a showing of "probable cause," and to say that an individual presuming to act as an officer, who was not selected by the people, who gives no bond, who is responsible to no one, and who is not even required to be a law-abiding citizen, is to be permitted to search the homes of our citizens at will and without responsibility is going farther than the people of Oklahoma ever intended or the law permits. The statute law of this state is

plain, and forbids the issuance of search warrants or the searching of private residences, except in the manner therein set out and in strict compliance therewith. The statutes upon the issuance and service of search warrants under the prohibitory act are as follows:

Section 3615, Rev. Laws 1910, provides:

"No such warrant shall issue but upon probable cause, supported by oath or affirmation describing as particularly as may be the place to be searched, and the person or thing to be seized."

Section 3616, Rev. Laws 1910, provides:

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house, or place for storage, or unless such residence is a place of public resort."

Under these sections of the law a search warrant cannot be lawfully issued, and no officer can lawfully enter and search the private residence of any one unless such residence is a place of public resort, or it or some portion of it is used as a store, or as a shop, or as a hotel, or as a boarding house, or as a place for storage. There is no contention in this entire record that any of these conditions attached to the habitation of the deceased, and not a line of proof in the record to indicate that any such condition existed. On the contrary, it appears that the plaintiff in error knew such conditions did not exist. Magistrates have no power to issue warrants to search a private residence, unless it is made clearly to appear that such residence comes within the exceptions of section 3616, *supra*. No officer has a lawful right to search any such residence, even though he possesses such warrant, unless such conditions, or some of them, exist in the habitation at the time the search is to be made. No man, be he officer or otherwise, is permitted to ruthlessly invade the sacred rights of any home, however humble, unless he is clearly within the law. The home of the American citizen is his castle supreme, and he who dares invade the sanctity thereof does so at his peril. Even though the plaintiff in error had been a lawful officer, his second attempt to search the premises of the deceased was an unlawful act, a wicked trespass, and an

intolerant invasion of the sacred rights of a sovereign citizen, and one that he had a right to resist for the reason that the warrant had already been served and was no longer authority under any condition. To this unlawful act was added the effort of plaintiff in error to make an unlawful arrest of the deceased at the point of a revolver, without a warrant or without other authority. He provoked the difficulty, and was not entitled to plead the law of self-defense. The jury made a mistake in convicting him of manslaughter instead of murder. Under the statute law of this state he was clearly guilty of murder. Under the circumstances disclosed by the record, the deceased had a right to apprehend the force that was used by the plaintiff in error and to resist it with like force if occasion demanded. The actions and conduct of plaintiff in error were such that he had himself been shorn thereby of the protection of the law.

This case has been poorly briefed on behalf of the plaintiff in error; in fact, the purported brief is a brief in name only. It contains scarcely no argument or authority, but simply states, in general terms, that the court erred in certain respects. In cases of this importance counsel should not bring these appeals, unless they intend to properly brief and present them to the court. It is the duty of counsel to brief cases, and not the duty of this court to brief them.

The first assignment of error is that the court erred in giving the following instruction:

"You are instructed that after a search warrant has been executed and the property and things therein described have been seized thereunder, its office has been performed and a lawful search cannot again be made thereunder."

This instruction is a correct statement of the law, and was properly given. The principle it states is so elementary and well understood that a man of ordinary intelligence would need no advice thereon.

It is next contended that the court erred in giving the following instruction:

"You are instructed that if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant shot and killed the deceased, and you further find and believe

beyond a reasonable doubt that his sole purpose of shooting and killing him was from motives of revenge, for any real or imaginary wrong previously inflicted upon him by the deceased, if any, and such motive was the sole moving cause of the killing, then the killing under such circumstances and for such reasons is murder, and if you so believe from the evidence beyond a reasonable doubt, you should return a verdict of guilty of murder as charged in the information."

This instruction was also a correct statement of the law, but even if it were not, an assignment of error based thereon would be of no avail in this case, for the reason that the plaintiff in error was convicted of manslaughter instead of murder. See *Byars v. State*, 7 Okla. Cr. 650, 126 Pac. 252; *Morgan v. Territory*, 16 Okla. 530, 85 Pac. 718.

It is next contended that the court erred in giving the following instruction:

"You are instructed that after the defendant had made a search of the dwelling house of the deceased, Dallas Alexander, under the search warrant that has been introduced in evidence in this case, and had seized liquor thereunder and had done all of the acts required of him under said warrant, except to make return thereof, he had no right to make another search of said premises under said warrant; and if you believe from the evidence in this case beyond a reasonable doubt that he did attempt to make a second search under the said warrant, then and in that event his acts were wrongful, and the deceased was justified in resisting any further search of said premises under said warrant, and the defendant had no right, when so resisted, to arrest the deceased on the ground that he was resisting an officer in the performance of his duties, and if he did so arrest the deceased, then such arrest and detention were wrongful, and deceased had the right to resist the said arrest and detention with all the force necessary to prevent the same, and if as a result of such unlawful arrest and detention a combat ensued between the deceased and the defendant, the defendant could not justify the shooting and killing of the deceased upon the ground of necessary self-defense, but he would be guilty of the crime of manslaughter in the first degree; even though the defendant by reason of the act of the deceased in resisting such arrest may have been in danger of losing his life, or of receiving great bodily harm at the hands of the deceased, unless before firing the fatal shot the defendant, by some word or positive act indi-

Cr. 11—7

cated to the deceased his intention to no longer detain the deceased under such unlawful arrest, and to in good faith withdraw from such combat, in such case he would have the right of self-defense, but, if after having indicated to the deceased his intention to withdraw from such combat, the deceased continued his assault upon the defendant, then the defendant had the right to give blow for blow, and to use all the means reasonably necessary to save his life, or to prevent serious bodily injury being done him, even to the extent of taking the life of his assailant. If you entertain a reasonable doubt as to whether or not the defendant was acting in his own lawful self-defense, then it will be your duty to give the defendant the benefit of the doubt and acquit him."

Counsel do not cite a single authority nor present a single argument in support of the contention that this instruction was erroneous. It was in fact more favorable to the plaintiff in error than the law warranted. Under our law the most favorable conception of the difficulty would be mutual mortal combat.

In *Carter v. State*, 30 Tex. App. 551, 17 S. W. 1102, 28 Am. St. Rep. 944, the Court of Criminal Appeals of Texas, in discussing a proposition very similar to this, but affected by law more favorable to the occasion, reviews the law fully. We quote the following from that opinion:

"Now, if the intent of the defendant was only to make an illegal and unwarranted arrest, this would not constitute a felony. If the arrest had been accomplished, it would have constituted only false imprisonment on the part of defendant, and in this state this is but a misdemeanor. The fact that the party arrested, or sought to be arrested, without warrant, may be shown to have been justly suspected of felony will not justify a homicide on the part of the officer, if he had no warrant, unless he bring himself within some of the rules laid down authorizing such arrest without warrant. *Staples v. State*, 14 Tex. App. 136; *Jacobs v. State*, 28 Tex. App. 79, 12 S. W. 408; *Ex parte Sherwood*, 29 Tex. App. 334, 15 S. W. 812. An officer having lawful authority to make an arrest may, on meeting with resistance, use such force as may be necessary to overcome such resistance, but he is not authorized to use greater force than is necessary for the arrest and detention of the accused party. *Beaverts v. State*, 4 Tex. App. 175; *Giroux v. State*, 40 Tex. 97. But this rule does not apply where the officer, in violation of law, undertakes to arrest a party without a warrant, nor in cases where

he has not the right to make such arrest. As we have seen, the defendant was engaged in attempting to make an unlawful arrest. Now, it is clear that he was in the wrong, because he was engaged in the attempt to perpetrate false imprisonment, and on account of that wrong was placed in a situation where, taken most strongly in his favor, it was necessary for him to defend himself against an attack made upon himself superinduced by that wrong. In such case the law justly limits his right of self-defense, and regulates it according to the magnitude of that wrong. In Reed's case, White, P. J., said: 'Wherever a party, by his own wrongful act, produces a condition of things wherein it becomes necessary for his own safety that he should take life or do serious bodily harm, then, indeed, the law wisely imputes to him his own wrong, and its consequences to the extent that they may and should be considered in determining the grade of the offense, which, but for such acts, would never have been occasioned. Mr. Bishop says: "The rule is commonly stated in American cases thus: If the individual assaulted, being himself without fault, reasonably apprehends death or serious bodily harm to himself unless he kills the assailant, the killing is justifiable." Bish. Crim. Law, sec. 865. But a person cannot avail himself of a necessity which he has knowingly and willfully brought upon himself. *State v. Neeley*, 20 Iowa, 108; *Adams v. People*, 47 Ill. 376; *State v. Starr*, 38 Mo. 270; *People v. Hunt*, 59 Cal. 430; *Wills v. State*, 73 Ala. 362; *Barnett v. State*, 100 Ind. 171; *Story v. State*, 99 Ind. 413. That is, it will not afford him a justification in law. How far and to what extent he will be excused or excusable in law must depend upon the nature and character of the act he was committing, and which produced the necessity that he should defend himself. When his own original act was a violation of law, then the law takes 'that fact into consideration in limiting his right of defense and resistance while in the perpetration of such unlawful act. If he was engaged in the commission of a felony, and, to prevent its commission, the party seeing, or about to be injured thereby, makes a violent assault upon him, calculated to produce death or serious bodily harm, and in resisting such he slay his assailant, the law would impute the original wrong to the homicide, and make it murder. But if the original wrong was or would have been a misdemeanor, then the homicide growing out of or occasioned by it, though in self-defense from an assault made upon him, would be manslaughter under the law.' *Reed v. State*, 11 Tex. App. 509, 517, 519 [40 Am. Rep. 795]; Pen. Code, art. 49. Defendant's theories of defense in

this case were mistaken identity and self-defense. In Peter's case Judge Hurt said: 'The defenses interposed are mistaken identity and self-defense. For the purpose of this opinion, the former will be considered as though Leck Crook had been the subject of the homicide.' In that case the deceased was mistaken for Leck Crook, as the deceased in this case was mistaken for Lawson. 'It will be further assumed as true,' says that opinion, 'that deceased, at the time the fatal shot was fired, was indicating, by some act done, a purpose to kill appellant or do him some serious bodily harm. The question then arises, How far, under what circumstances, did the right of self-defense attach? * * * Having then killed Leck Crook (or his legal equivalent) in the attempt to illegally arrest him, the homicide cannot be of a less grade than manslaughter, though done upon reasonable apprehension of danger. The slayer in such case stands in the attitude of a trespasser, his situation being analogous to that of him who provokes the difficulty, or furnishes the occasion therefor, in the course of which he slays his adversary to save himself.' *Peter v. State,* 23 Tex. App. 684, 687, 5 S. W. 228; *King v. State,* 13 Tex. App. 277. 'Cases may arise in which an original trespasser, or one who provokes or furnishes the occasion for a difficulty, becomes entitled to the right of full and perfect self-defense. * * * This right being forfeited or abridged by his own act, it must be revived by his own act; as where one condones the trespass or wrong by retiring from the difficulty in an unequivocal manner, and his adversary then renews the combat. In such case, the nature and character of the original trespass or provocation enters as an element in illustrating the animus of the party renewing the difficulty, and fixes the grade of the offense committed in its progress.' *Peter v. State,* 23 Tex. App. 684, 5 S. W. 228."

It is next contended that the court erred in failing to give certain requested instructions. A reading of the record indicates that these instructions were based upon an erroneous theory, and were properly refused. There is no evidence in the record upon which some of them could be properly based. Counsel present no reasoning nor authority to sustain their contention, and, none appearing to this court, these assignments will receive no further consideration.

The record as a whole, as well as brief of counsel in this case, is subject to severe criticism. There is no index to the case-made, and not a single page of the same is numbered. It

requires almost endless effort to review the record and the contentions of counsel. We trust that similar appeals will not be brought to this court. Our examination of the record and brief fails to disclose any error prejudicial to the substantial rights of plaintiff in error. In fact, he was convicted of manslaughter when he should have been convicted of murder. The judgment of the trial court is affirmed.

DOYLE, J., concurs. FURMAN, J., absent on account of sickness.