[No. 36981. Department Two. January 28, 1965.]

*In the Matter of the Application for a Writ of Habeas Corpus of* CHARLES A. MCNEAR, JR., *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*[*]

[*]Reported in 398 P. (2d) 732.

Herbert M. Stephens and Philip L. Burton, for petitioner.

The Attorney General and Stephen C. Way, Assistant, for respondent.

HAMILTON, J.—On March 14, 1962, in King County, Washington, Charles A. McNear, Jr., was convicted of the crime of unlawful possession of narcotics and sentenced to the Washington State Penitentiary. He has since filed with this court an original application for a writ of habeas corpus contending his conviction was obtained in violation of his rights under the constitutions of this state and of the United States.

The petition and the state's answer raised issues of fact which could not be determined from the face of the record, and, pursuant to Rule on Appeal 56(5), RCW Vol. 0, this court by order referred the proceeding to the Superior Court of King County for factual findings. Pursuant to such order of reference, an extensive hearing was conducted at which petitioner was present and represented by court-appointed counsel, findings of fact were made, and the record returned to this court for final determination.

A review of the statement of facts, including a transcript of the testimony and proceedings of petitioner's trial reveals the following relevant background information:

On November 29, 1961, at about 5:30 p. m., the petitioner was observed shoplifting in the city of Seattle. He was arrested, taken to the city jail, booked for investigation under an "open shoplifting-larceny" charge, and placed in a cell. About 2 hours later, petitioner was taken to an interrogation room where he was interviewed by a city detective assigned to the larceny detail. The purpose of the interview

was to obtain a consent to search petitioner's apartment and automobile for stolen goods. The interview lasted about 30 minutes, during the course of which petitioner signed a consent, which, in broad terms, granted to the chief of police or his representatives authorization to conduct a search of petitioner's apartment and automobile. Petitioner was thereafter returned to his cell.

At about 10:15 p.m., the detective and another officer of the larceny detail entered petitioner's apartment and commenced their search for stolen property. They found no stolen goods; however, in the course of their search, they discovered, in a band-aid box in the drawer of a night stand, a hand-rolled cigarette and four capsules which they suspected contained narcotics. They immediately notified the narcotic detail of the police department and awaited the arrival of the officers from that detail.

Sometime between 11 and 11:30 p.m., two officers from the narcotic detail arrived and were admitted to the apartment. They examined the cigarette and confirmed its content as marijuana. The officers from the larceny detail retained in their possession the cigarette and capsules and left the apartment to search petitioner's automobile. The officers from the narcotic detail remained in the apartment and embarked upon a search for additional narcotics. Their search lasted approximately 2½ hours and culminated in the discovery of two wax-paper bags containing marijuana, together with some cigarette papers, secreted in a closet. They seized these items as evidence.

On the morning of December 1, 1961, petitioner was interrogated by an officer of the narcotics detail and confronted with the discovery of the marijuana. He signed a written statement admitting ownership and possession thereof. In the early afternoon, petitioner was again interviewed by an officer from the larceny detail and gave a statement admitting the shoplifting incident. He was charged in justice court with the offenses of petit larceny, a misdemeanor, and unlawful possession of narcotics, a felony.

On December 11th, petitioner conferred with an attorney of his own choice, and a reduction of bail was effected,

although bail was not thereafter posted. On December 12th, petitioner appeared without an attorney in justice court for arraignment on the misdemeanor and preliminary hearing upon the felony. The matter was continued until December 14th. There is evidence that petitioner was in contact with the attorney of his choice on December 13th; however, on December 14th, he again appeared in justice court without an attorney at which time pleas of not guilty were entered, some evidence was adduced by the state, and the matter was continued until January 4, 1962.

On January 4th, petitioner again appeared without counsel although the evidence indicates he was in contact with counsel of his choice on December 27th. Presentation of the evidence was completed. Petitioner was found guilty of and sentenced upon the misdemeanor and bound over to the superior court upon the felony. Through another attorney, petitioner filed notice of appeal from the misdemeanor conviction. Upon arraignment in the superior court on the felony charge, a third attorney was appointed to represent him at public expense.

On March 14, 1962, the felony charge came on for trial in superior court with petitioner represented by his court-appointed counsel. Trial by jury was waived. Petitioner, through his counsel, objected to the introduction into evidence of the consent to search, his signed statement, and the marijuana. His objections were overruled. Otherwise, his defense was that others had access to his apartment and that the marijuana was placed there without his knowledge.

Petitioner was found guilty and sentenced to serve not more than 20 years in the Washington State Penitentiary. He did not appeal from his conviction and sentence. His minimum term was fixed by the Board of Prison Terms and Paroles at 10 years. This petition for writ of habeas corpus followed. It is fair to conclude, from statements in petitioner's supplemental brief in support of his petition and from colloquy appearing in the statement of facts, that petitioner elected to forego his right of appeal because of a belief that prior convictions involving narcotics would not

be considered by the parole board in fixing his minimum term.

■ Although petitioner did not pursue his appellate remedies, we are required by the provisions of RCW 7.36-130(1)[1] and 7.36.140[2] to determine, within the framework of the allegations of petitioner's application for a writ of habeas corpus, whether any fundamental rights guaranteed to him by the United States and state constitutions have been so violated as to result in a denial of due process. We do not retry the case upon the merits. Neither do we reach alleged trial errors which would be reviewable on appeal. *In re Pettit v. Rhay*, 62 Wn. (2d) 515, 383 P. (2d) 889 (1963).

Basically, petitioner's allegations of constitutional infringements reduce themselves to assertions that:

(1) His consent to search was involuntary, hence the ensuing search and seizure was unlawful and in violation of his rights under the fourth and fourteenth amendments to the United States Constitution and Const. Art. 1, § 7;

(2) His consent to search was limited in scope to a search for stolen property and the enlargement thereof to a search for narcotics rendered such a search unreasonable and the seizure of narcotics unlawful in violation of his rights under the fourth, fifth, and fourteenth amendments to the United States Constitution and Const. Art. 1, § 7;

(3) His signed statement admitting ownership and pos-

---

[1] "No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

"(1) Upon any process issued on any final judgment of a court of competent jurisdiction except where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the state of Washington or of the United States have been violated." RCW 7.36-.130(1).

[2] "In the consideration of any petition for a writ of habeas corpus by the supreme court, whether in an original proceeding or upon an appeal, if any federal question shall be presented by the pleadings, it shall be the duty of the supreme court to determine in its opinion whether or not the petitioner has been denied a right guaranteed by the Constitution of the United States." RCW 7.36.140.

session of the marijuana was involuntary and induced by the unlawfully seized evidence in violation of his rights under the fourth, fifth, sixth, and fourteenth amendments to the United States Constitution and Const. Art. 1, §§ 7, 9; and

(4) His request for a continuance of his trial and preliminary hearing in justice court in order that he might obtain counsel was denied in violation of his rights under the sixth and fourteenth amendments to the United States Constitution and Const. Art. 1, § 22 (amendment 10).

At the conclusion of the reference hearing, the trial judge weighed the evidence bearing upon petitioner's allegations, reviewed the testimony and proceedings of the original trial, and entered findings of fact with respect to each contention. In essence, he found:

(a) Petitioner did not request nor was he denied the right to communicate with or obtain the assistance of counsel at the time of giving his consent to search and subsequent written admission;

(b) Petitioner signed the written consent to search his apartment willingly, knowingly, and without inducement or physical or mental coercion;

(c) The consent to search was not, by its terms, limited to a search for stolen property;

(d) Petitioner's signed admission relating to the marijuana was given voluntarily and without physical or mental coercion; and

(e) Petitioner did not request, on January 4, 1962, a continuance of his misdemeanor trial or preliminary hearing.

■ We are prone to attach great significance to the factual findings of the trial court upon the issues referred to it, particularly where such findings arise out of contradictory testimony. Nevertheless, when fundamental constitutional rights are in issue, we are compelled to make our own independent examination of the testimony, the findings, and the record for the purpose of determining whether there has been a denial of due process of law. *Haynes v. Washington,* 373 U. S. 503, 10 L. Ed. (2d) 513, 83

S. Ct. 1336 (1963); *Ker v. California,* 374 U. S. 23, 10 L. Ed. (2d) 726, 83 S. Ct. 1623 (1963); *State v. Rutherford,* 63 Wn. (2d) 949, 389 P. (2d) 895 (1964).

In approaching and evaluating the contentions of petitioner, the evidence offered in connection therewith, and the trial court's findings of fact, we cannot close our eyes to certain circumstances revealed by the record and the effect thereof upon the credibility and weight to be attached to his testimony and claims. They are: (a) Petitioner is not a novice in the criminal arena, having admitted during his trial at least three prior convictions; (b) despite the inference suggested by petitioner's assertion in his pro se brief that he "has completed 9-years of formal schooling," he testified at his trial that he had completed high school and approximately 1½ years of college; and (c) petitioner at his trial volunteered the statement to the trial judge that he was not objecting to the consent that he "gave the officers to search" his place.

We turn now to petitioner's first contention, namely, that his consent to search was involuntary thereby rendering the ensuing search unreasonable and in violation of fundamental constitutional rights. It is to be noted in this latter respect that the fourth amendment to the United States Constitution, proscribing unreasonable searches and seizures, together with the federal exclusionary doctrine, is obligatory upon the states through the fourteenth amendment to the United States Constitution. *Wolf v. Colorado,* 338 U. S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359 (1949); *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684, 84 A.L.R. (2d) 933 (1961). And, the proscription against self incrimination contained in the fifth amendment has, through the fourteenth amendment, likewise become obligatory upon the states. *Malloy v. Hogan,* 378 U. S. 1, 12 L. Ed. (2d) 653, 84 S. Ct. 1489 (1964).

In *State v. Greco,* 52 Wn. (2d) 265, 266, 324 P. (2d) 1086 (1958), we stated the rules applicable to this contention as follows:

"Because a search is made without a warrant does not of itself prove an invasion of the appellant's constitutional

guaranty against unreasonable search and seizure. 79 C.J.S. 828, § 65. The necessity for a search warrant may be waived. 79 C.J.S. 816, § 62. The law respecting the waiver of immunity to search was recently summarized by United States District Judge Ben C. Dawkins, Jr., in *United States v. Kidd,* 153 F. Supp. 605 (July, 1957), in the following paragraph:

" 'It is fundamental, in the absence of a valid warrant either of arrest or for a search, that the burden of proving there was a truly voluntary and fully informed consent rests upon the Government. Such proof must be made by clear and positive evidence, and it must be established that there was no coercion actual or implied. The Government must show a consent that is unequivocal and specific, freely and intelligently given. If the consent actually given is made under compulsion, either "physical or moral", it may not serve to validate a search and seizure otherwise invalid for want of a proper warrant. No general exploratory search and seizure of either persons, houses, or effects can ever be justified either with or without a warrant.' "

In support of this contention, petitioner, in essence, testified that, when asked to sign the consent to search his apartment, he read the first part of the form, did not understand the full import thereof, requested permission to procure advice of counsel, which was denied, and thereafter reluctantly signed the consent. He acknowledged he knew, pursuant to the consent, that the officers would enter and search his abode for stolen property.

The officer procuring the consent, on the other hand, in substance testified that, when he explained the purpose of the proposed search to petitioner, petitioner denied the presence of any stolen property in his apartment, read the consent form, willingly and without objection signed it, and did not, at any time during the interview, request communication with or advice of counsel. The officer further testified that when he later questioned petitioner as to why he signed the consent, in view of the presence of marijuana in the apartment, petitioner stated he forgot that the marijuana was there.

The trial court believed the officer and disbelieved petitioner. So do we. We are satisfied, from our review of the

statement of facts and the proceedings of the original trial, that at the time in question petitioner fully understood a search of his apartment for stolen property was being proposed and that he, with that understanding, intelligently and unequivocally consented thereto. We find no coercion, actual or implied. The fact that petitioner was in custody at the time does not ipso facto import coercion or compulsion. *Cf. State v. Greco, supra.*

By his second contention, petitioner challenges the seizure of the marijuana and its subsequent use as evidence upon the grounds that the consent to search was limited to a search for stolen property, and did not embrace a search for narcotics.

■ In this respect, the testimony is undisputed that the official request for the consent to search was predicated solely upon a belief that stolen property, in the nature of "shoplifted" articles, would be found. Petitioner was so informed by a member of the larceny detail and signed the consent with that understanding. Under such circumstances, the consent to search, which under any circumstances amounts to no more than a waiver of a search warrant, was limited in its scope, despite the all-encompassing language thereof. It would not and could not support a general exploratory search or seizure. 1 Varon, Searches, Seizures and Immunities, Ch. IV, § 3(c), p. 231.

■ It is also undisputed that the officers of the larceny detail entered petitioner's apartment and commenced their search within the scope and purpose of the consent, during the lawful course of which they discovered the marijuana cigarette. Possession of marijuana is unlawful. RCW 69.33. The cigarette was contraband. It was subject to seizure by the officers of the larceny detail in the course of their otherwise lawful search, and became admissible in evidence in the prosecution of the offense of unlawful possession of narcotics. *Harris v. United States,* 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098 (1947); *Brooks v. State,* 235 Md. 23, 200 A. (2d) 177 (1964).

The more vexing question, however, is whether the ensuing search and seizure by the officers of the narcotics

detail, without a search warrant or further consent from petitioner, was reasonable within the contemplation of the fourth and fifth amendments to the United States Constitution.

The United States Supreme Court, speaking through *Ker v. California, supra,* states (p. 33):

". . . While the language of the Amendment is 'general,' it 'forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made. . . .' *Go-Bart Importing Co. v. United States,* 282 U. S. 344, 357 (1931). Mr. Justice Butler there stated for the Court that '[t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted.' *Ibid.* He also recognized that '[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' *Ibid.;* see *United States v. Rabinowitz,* 339 U. S. 56, 63 (1950); *Rios v. United States,* 364 U. S. 253, 255 (1960)."

Seeking to apply the test of reasonableness to the instant case, we turn first to the facts.

It is admitted that, following the arrival of the officers from the narcotics detail and the verification by them of the narcotic content of the cigarette in question, the officers from the larceny detail abandoned their search of the apartment and continued it elsewhere. It is likewise undisputed that the officers of the narcotic detail then embarked upon an extensive search of the apartment for narcotics without either a search warrant or any further consent from petitioner authorizing a search for such purpose. Beyond cavil, the purpose of their search was to find incriminating evidence supportive of the criminal offense suggested by the discovery of the marijuana cigarette by the officers of the larceny detail.

It is not contended by the state, nor supported by the evidence, that the search by the narcotics detail constituted, in any way, a continuing search for stolen property. Neither can it be successfully asserted that the narcotics search was carried on incident to or contemporaneously with any ar-

rest of petitioner, for he was not present and, in fact, was not informed of the discovery of narcotics or charged with possession thereof until the second day after the search. *Cf. Stoner v. California,* 376 U. S. 483, 11 L. Ed. (2d) 856, 84 S. Ct. 889 (1964). Nor can it be convincingly urged that time was of the essence for petitioner was in jail. He could not destroy the evidence, and he had not then established any outside contacts. Even so, a guard could have been posted at the apartment and a search warrant obtained.

Under the circumstances presented, it can only be fairly concluded that the search conducted by the officers of the narcotic detail constituted a second, distinct, and separable search. It followed completion of the search of the apartment for stolen goods, and was not within the contemplation of the consent.

■ Second or repetitive searches and seizures, even when predicated upon an outstanding search warrant or conducted incident to a valid arrest, have long and uniformly been characterized as unreasonable. *State v. Pina,* 94 Ariz. 243, 383 P. (2d) 167 (1963); *McDonald v. State,* 195 Tenn. 282, 259 S. W. (2d) 524 (1953); *Coburn v. State,* 78 Okla. Crim. 362, 148 P. (2d) 483 (1944); *Duncan v. State,* 11 Okla. Crim. 217, 144 Pac. 629 (1914); *State v. Moran,* 103 W. Va. 753, 138 S. E. 366 (1927); *McDaniel v. State,* 197 Ind. 179, 150 N. E. 50 (1926); *Gamble v. Keyes,* 35 S. D. 644, 153 N. W. 888 (1915).

We conclude that the search and seizure conducted by the officers of the narcotic detail, without the benefit of a search warrant or further consent from petitioner, was unreasonable and in violation of his constitutional rights under the fourth and fifth amendments to the United States Constitution. The evidence procured thereby should have been excluded at petitioner's trial. *Mapp v. Ohio, supra.*

By his third contention, petitioner contends that his written admission of possession and ownership of the marijuana uncovered by the searches was induced by unlawfully seized evidence and should have been excluded. The state concedes this contention to be valid if the marijuana was unlawfully seized.

■ There is no doubt, under the evidence, that the officer from the narcotics detail, who elicited the admission from petitioner, confronted petitioner with the fact of the discovery. Likewise, there can be little doubt that the confrontation induced the admission. The admission, being the "fruit" of the unlawful search, should have been excluded. *Silverthorne Lbr. Co. v. United States*, 251 U. S. 385, 64 L. Ed. 319, 40 S. Ct. 182, 24 A.L.R. 1426 (1920); *Nardone v. United States*, 308 U. S. 338, 84 L. Ed. 307, 60 S. Ct. 266 (1939); *Wong Sun v. United States*, 371 U. S. 471, 9 L. Ed. (2d) 441, 83 S. Ct. 407 (1963).

Finally, petitioner contends that denial of a request for continuance of his trial upon the misdemeanor and the preliminary hearing amounted to a denial of his right to assistance of counsel under the sixth and fourteenth amendments to the United States Constitution and Const. Art. 1, § 22 (amendment 10).

The trial court found, based upon the official records of the justice court, that petitioner did not make a request for continuance on January 4, 1962. The trial court further found that petitioner was in communication with an attorney upon three occasions prior to January 4th, each time shortly preceding a scheduled hearing date, and that a second attorney filed a notice of appeal from the misdemeanor conviction on petitioner's behalf.

We accept the trial court's finding that petitioner did not request a continuance at the hearing of January 4th. Furthermore, it would appear that petitioner had ample opportunity prior to the hearing on January 4th to enlist the aid and assistance of counsel, or to advise the justice court that he was financially unable to employ counsel. This he did not do.

We find no merit in this contention.

The petition for writ of habeas corpus is granted for the reasons stated with respect to contentions two and three, unless petitioner be afforded a new trial within 45 days following the filing of this opinion.

DONWORTH, WEAVER, and OTT, JJ., concur.

FINLEY, J. (concurring in the result)—The decision of the United States Supreme Court in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684, 84 A.L.R. (2d) 933 (1961), and the trend in subsequent state decisions clearly indicate that the exclusionary "fruit of the poison tree doctrine" of the *Weeks*[3] case is now supported by the great weight of authority, in fact is the law of the land, unless and until revised by authoritative court decisions. Since our decision in *State v. Rousseau,*[4] and my concurring opinion therein, I have been convinced of the soundness of the evaluation by the late John H. Wigmore that the *Weeks* case and its so-called exclusionary doctrine is a contagion of sentimentality[5]—nothing more, nothing less. Furthermore, I think the policy considerations involved are unsound and unworkable and should not be perpetuated. In other words, if the courts are to "police the police," and I can agree that in some respects the courts probably should, other procedures or judicial mechanisms should be exercised, such as contempt of court,[6] to correct and control interference or obstruction of the administration of justice. This in my judgment would be much more effective in regulating questionable police methods and in establishing proper police practices than the present policy of the judiciary of relying upon the *Weeks-Mapp* doctrine. I question whether law enforcement officers read the advance sheets, or for that matter the opinions of appellate courts in the bound volumes. If they do, or if they hear of decisions of the *Weeks* and *Mapp* variety, I am very dubious

---

[3] *Weeks v. United States,* 232 U. S. 383 (1913).

[4] *State v. Rousseau,* 40 Wn. (2d) 92, 241 P. (2d) 447 (1952).

[5] 8 Wigmore, Evidence § 2184 (3d ed. 1940).

[6] Blumrosen, *Contempt of Court and Unlawful Police Action,* 11 Rutgers L. Rev. 526, 532 (1957).

Unlawful arrest, search and seizure without warrant or probable cause could be prohibited and contempt proceedings could be authorized by promulgation of rules of court or by legislation, or both. Police officers violating the prohibition would be cited to show cause, or be held in contempt of court. Trial courts could impose sanctions against offending officers, conditioned upon disciplinary action being taken against the officers by appropriate police authorities within a period of time specified by court order.

about such decisions preventing a police officer from making an unlawful arrest, or search and seizure, when he is on the firing line, so to speak, attempting to apprehend a suspect, or trying to impound stolen goods or contraband. Suspension from duty, *and without pay,* compelled by contempt of court order under appropriate police disciplinary procedure and authority, has a much more convincing ring, and should be more reasonably effective in correcting overreaching police tactics. The suggested alternative law enforcement supervisory procedure has a most important byproduct: relevant, competent evidence, having effective and proper probative value (except for the *Weeks-Mapp* exclusionary policy) will be available and usable for the prosecution of criminal charges. It seems far-fetched, bordering on the grotesque, to expect to train police officers, and to better supervise questionable police tactics, by weakening the prosecution of criminal cases and actually in some cases turning criminals loose because, as Cardozo once said, "the constable has blundered."[7] In addition, the *Weeks-Mapp* police administration policy is certainly not conducive to effective law enforcement respecting criminal offenders. The interests of the public in this and their protection from the predatory proclivities of the criminal element require some re-thinking in this area of the law apropos of a sounder solution of the problems of unlawful arrest, search and seizure, than I can find in *Weeks* and *Mapp.* I am convinced that a better solution can be found, and believe that the contempt of court procedure mentioned herein has rational and constructive possibilities. But only one or a few voices in dissent cannot hope to stem the present tide. And, for the time being at least, I am bound by *Mapp v. Ohio, supra,* so at the present time I reluctantly concur.

---

[7] *People v. Defore,* 242 N.Y. 13, 150 N.E. 585 (1926).