[No. 4183–1.   Division One.   May 9, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTINE MARIE WERTH, *Appellant*.

*Peter G. Rothschild* of *Snohomish County Public Defender*, for appellant.

*Robert E. Schillberg, Prosecuting Attorney*, and *Thomas J. Wynne, Deputy*, for respondent.

JAMES, J.—At bench trial, Christine Marie Werth was found guilty of being an accessory to escape. RCW 9.01.040.

On appeal, she contends that the trial judge erred in denying her motion to suppress. The trial judge ruled that Werth had voluntarily consented to the search of her home which resulted in the discovery and apprehension of an escapee from the Washington State Reformatory. We hold that Werth did not voluntarily consent to the search and that the search was unlawful.

Testimony at the hearing on Werth's motion to suppress established that on the morning of April 26, 1975, she awoke to the sound of police knocking upon her front door. She opened the door. Without asking for permission, two officers from the Mountlake Terrace Police Department and two officers from the Seattle Police Department entered the home and searched for an escapee from the Washington State Reformatory. They had neither an arrest nor a search warrant. Although the officers did not find the escapee, they did find a pair of men's shoes. They questioned Werth without advising her of her constitutional rights. She admitted that the escapee had previously been there. The officers questioned neighbors and one identified a photograph of the escapee and related that she had seen him at Werth's home the night before. Approximately 1 hour after the officers had departed, Werth called the Mountlake Terrace Police Department and told them the escapee had just called her and told her he had seen the officers present and that he would not return.

The reason for the search was a communication from the Washington State Reformatory that an inmate who had escaped might possibly be located at Werth's home. Seattle police had also reported that a reliable informant had told them that the escapee had been seen the night before at Werth's home.

The trial judge found that this search was "without the consent of the defendant, without a lawful warrant and was therefore unreasonable." Conclusion of law No. 1. He properly ruled that all evidence obtained as a result of the search was suppressed.

Two days after the initial entry and search, an officer with the Mountlake Terrace Police Department received three telephone calls from a female informant. She told him that the escapee had been in Werth's home at 7 p.m. the previous evening, that he had been staying there, and that she thought he was probably still there. This informant was previously unknown to the officer. She told the officer that she had known Werth for quite some time and had visited her home frequently. The informant gave her name, address and telephone number.

After the police had reviewed this information as well as the information which precipitated and flowed from the original search, they decided to conduct a second search of Werth's home. At approximately 11 a.m. on April 28, a group of police officers again surrounded Werth's home. Again they had procured neither a search nor an arrest warrant. The Mountlake Terrace police dispatcher telephoned Werth and told her that her house was surrounded and that she should immediately go outside, keeping her hands in plain view. Werth complied and was directed by an officer to step farther out onto the lawn. The officer in charge testified that he identified the men present as police officers and told Werth that they had information that the escapee was hiding in her home; that Werth denied that the escapee was present and said, "Go ahead and take a look"; that he told Werth she could be charged with a crime if the escapee were present; and that Werth repeated her assertion that the escapee was not inside and told them to go ahead and search.

Werth testified that she was not asked for permission to search and that she did not consent to the search of her home. It is undisputed that one officer remained with her while the rest went inside to search. Werth testified that she asked him whether they had a warrant and replied they did not need one. Werth admitted that she was frightened at the time and might not remember everything which occurred.

Another officer testified that during the exchange between the officer in charge and Werth, he heard a scuffling sound from the north side of the house. The sound appeared to him to come from a ventilator duct to the attic. The officer entered and found the escapee hiding in the attic.

The trial judge ruled that Werth had voluntarily consented to the second search. Conclusion of law No. 3. He further ruled that the second search was not a direct result of the unlawful first search and that the evidence obtained was admissible. He did not rule on whether there was probable cause for the second search.

■■ The Fourth Amendment protects against unreasonable searches and seizures. *State v. Smith,* 88 Wn.2d 127, 559 P.2d 970 (1977). A search and seizure without a warrant, as we have in this case, is per se unreasonable unless it falls within one of the few specifically established and well–delineated exceptions to this rule. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). One such exception, which is also exempt from the probable cause requirement, occurs when a person consents to a search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). However, for such consent to be valid, it must be obtained without coercion either by explicit or implicit means. *Bumper v. North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968). That is, consent must result from a person's own "essentially free and unconstrained choice" whose will has not been "overborne" and whose "capacity for self–determination [has not been] critically impaired." *Schneckloth v. Bustamonte, supra* at 225. Whether a person voluntarily consents to a search is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte, supra; State v. Shoemaker,* 85 Wn.2d 207, 533

P.2d 123 (1975). The burden of showing that a person consented to a search is upon the state. *Bumper v. North Carolina, supra.* It must establish such consent by "clear and positive evidence." *McNear v. Rhay,* 65 Wn.2d 530, 537, 398 P.2d 732 (1965), *quoting State v. Greco,* 52 Wn.2d 265, 266, 324 P.2d 1086 (1958). In reviewing the record, we must necessarily attach great significance to the trial judge's findings of fact particularly where, as here, there has been contradictory testimony. However, when a fundamental constitutional right is in issue, we must independently examine the record to determine whether there has been a denial of due process of law. *McNear v. Rhay, supra.*

In the present case, there were many coercive factors present. Police ordered Werth out of her home and ordered her to keep her hands in plain view. When she emerged from her home, they ordered her away from the door. She saw at least one officer armed with a shotgun. Although the trial judge found as fact that Werth was not under physical police restraint or in custody, the recent case of *State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977) compels us to conclude otherwise. She was under arrest because of her "liberty of movement or freedom to remain in the place of [her] lawful choice" (*i.e.,* her home) was under restraint "by conduct reasonably implying that force [would] be used." *State v. Byers, supra* at 5, *quoting Kilcup v. McManus,* 64 Wn.2d 771, 777, 394 P.2d 375 (1964). In addition, she was not informed of her right to refuse consent to the search. These circumstances alone were strongly indicative of coercion. In view of the additional circumstance that 2 days before, Werth's home had been searched illegally without her consent, it is apparent that overall, the situation was rife with coercion. She may well have verbalized her consent to the search, but there can be little question that, in her own mind, police were going to search her home with or without her consent.

We recognize that one who is under arrest may nevertheless voluntarily consent to a search. *United States v.*

*Watson,* 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976). We further recognize that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth v. Bustamonte, supra* at 227. Our review of the record, however, convinces us that Werth's consent was coerced. We cannot say that the State established by clear and positive evidence that her consent resulted from her own "essentially free and unconstrained choice." *Schneckloth v. Bustamonte, supra* at 225. We, therefore, hold that she did not voluntarily consent to the search of her home.

■ The trial judge did not determine whether probable cause plus exigent circumstances existed to excuse the police from obtaining a warrant to search Werth's home. Since the facts surrounding the search are not in dispute, we will decide this question rather than remand the case. *Cf. State v. Talley,* 14 Wn. App. 484, 543 P.2d 348 (1975). We find that there was neither probable cause nor exigent circumstances to excuse the warrant requirement.

■ To establish probable cause for the issuance of a search warrant, one must recite objective facts and circumstances which, if believed, would lead a neutral and detached person to conclude that more probably than not, evidence of a crime will be found if a search takes place. These objective facts and circumstances must come from a reliable source. This is the so-called 2-pronged requirement. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

Here, the informant, who called police the morning of the second search, was not previously known to them. There is no indication of the informant's reliability. Police related only that the informant had stated that the escapee had been in Werth's home the evening before and that he was probably still there. This is merely a conclusory statement which does not relate the objective facts and circumstances upon which it is based. The only other information police

possessed was what they discovered as the result of the prior unlawful search. Consequently, probable cause did not exist to justify the search.

Assuming arguendo there was probable cause to search, there still were no exigent circumstances to excuse the warrant requirement. Police were informed in the late morning that the escapee was present in Werth's home. There was no reason to believe that he was holding her hostage or that her life was in danger. They could have obtained a search warrant quickly. In the meantime, they could have placed her home under surveillance. He could not have gone anywhere. The mere fact that the person they wished to search for was an escapee did not give rise to exigent circumstances.

We hold that the search was unreasonable, hence, unlawful.

Finally, the State argues that police heard the attic noise while outside Werth's home and that this provided probable cause. This argument fails to recognize that the noise did not precede the search. Rather, it occurred during an unlawful search. It cannot justify the search.

The police misconduct in this case amply demonstrates the continuing need for judicial review to protect the constitutional rights of the citizens. Police here twice ignored one of our most fundamental constitutional rights. Such action is utterly unjustifiable and cannot be countenanced in a free society.

Reversed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied September 28, 1977.

Review denied by Supreme Court June 16, 1978.