[No. 6711-4-III. Division Three. July 24, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS GEORGE JENSEN, *Appellant.*

*John D. Knodell,* for appellant (appointed counsel for appeal).

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Stephen J. Hallstrom, Deputy,* for respondent.

MUNSON, J.—Douglas G. Jensen appeals his conviction for possession of a controlled substance, cocaine. RCW 69.50.401(c). The issues are: (1) whether Mr. Jensen voluntarily consented to the search of his car; (2) whether evidence of the cocaine seized during the consensual search of Mr. Jensen's car must be suppressed as the product of a prior illegal search; and (3) if the consent was voluntary and untainted, whether the search of Mr. Jensen's coat, found within his car, exceeded the scope of his consent. We affirm.

On January 25, 1984, Trooper D. C. Richmond of the Washington State Patrol stopped Mr. Jensen for speeding. A check on Mr. Jensen's Oregon license indicated it was suspended. Mr. Jensen was arrested, patted down, handcuffed, and placed in the patrol car.

Trooper Richmond advised Mr. Jensen he had the option of having his car left on the side of the highway or

impounded. Mr. Jensen elected to have the car impounded. While waiting for the tow truck to arrive, Trooper Richmond requested Mr. Jensen to list all of the valuables in the car for inventory purposes. Mr. Jensen listed a number of items, including two plastic garbage bags in the trunk. He claimed one of the bags contained a suitcase and the other dirty laundry. He asked the trooper to retrieve the bag containing the suitcase since the suitcase contained money he would need to post bail.

After the tow truck arrived, Trooper Richmond went to the trunk of Mr. Jensen's car to retrieve the suitcase. He touched one of the bags, identifying it as the one containing the suitcase. He then felt the second bag; its contents felt like the tops of ziplock bags and roughage, not laundry. Believing the bag contained marijuana, he punched a hole in it, verifying that it, in fact, contained marijuana.

Returning to the patrol car, Trooper Richmond stored the bag under the front seat. He then advised Mr. Jensen of his *Miranda* rights; at the suppression hearing, Mr. Jensen denied this. Trooper Richmond further testified Mr. Jensen stated he understood these rights.

While en route to the Grant County Jail, Mr. Jensen orally consented to the search of his car. During booking, Mr. Jensen again stated he did not care if his automobile was searched. Approximately 1 hour after being "*Mirandized*," Mr. Jensen signed a "consent to search" form in the presence of Trooper Richmond and Deputy Sheriff Larry Yount. At that time, Trooper Richmond read Mr. Jensen the following language from the consent form:

> I, Doug G. Jensen, understanding my Constitutional Right to refuse consent to have a search made of the premises hereafter described and of my *right to refuse to consent to a search without a search warrant,* hereby authorize the undersigned officers of the Wash. State Patrol to conduct a complete search of the vehicle . . .

(Some italics ours.)

Trooper Richmond searched the car the next day. He seized two bindles of cocaine from the right front pocket of

a jacket found on the backseat of Mr. Jensen's car.

At the suppression hearing, the trial court suppressed evidence of the bag containing marijuana. It did not suppress evidence of the cocaine. Following a bench trial, Mr. Jensen was convicted of possession of a controlled substance. The court dismissed the charge of driving with a suspended license after it became evident Mr. Jensen had not received notice of the suspension.

 The initial issue is whether Mr. Jensen voluntarily consented to allow Trooper Richmond to search his automobile. The general test for consent is "whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, *is a question of fact to be determined from the totality of all the circumstances.*" (Italics ours.) *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *State v. Mak,* 105 Wn.2d 692, 713, 718 P.2d 407 (1986); *State v. Shoemaker,* 85 Wn.2d 207, 211–12, 533 P.2d 123 (1975). The prosecution bears the burden of demonstrating that the consent to search is voluntary. *Bumper v. North Carolina,* 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788 (1968); *Shoemaker,* at 210. In assessing whether consent was freely and voluntarily given, the trial court should consider, *inter alia*: "(1) whether *Miranda* warnings had been given prior to obtaining consent; (2) the degree of education and intelligence of the consenting person; and (3) whether the consenting person had been advised of his right not to consent." *Shoemaker,* at 212; *State v. Rangitsch,* 40 Wn. App. 771, 776, 700 P.2d 382 (1985); *see also Bustamonte,* 412 U.S. at 225. Consideration of these factors should be weighed against one another; no one factor is controlling. *Shoemaker,* at 212.

Here, although Mr. Jensen was in custody at the time he consented, examination of the record reveals no trace that his "will ha[d] been overborne and his capacity for self–determination critically impaired". *United States v. Watson,* 423 U.S. 411, 424, 46 L. Ed. 2d 598, 96 S. Ct. 820, 828 (1976) (quoting *Bustamonte,* 412 U.S. at 225). Mr. Jensen

was not threatened overtly or implicitly or otherwise induced into consenting to the search. Nor does he contend his consent was given because of the discovery of the marijuana. 2 W. LaFave, *Search and Seizure* § 8.2(d), at 653 (1978 & Supp. 1986); *State v. Werth,* 18 Wn. App. 530, 571 P.2d 941 (1977), *review denied,* 90 Wn.2d 1010 (1978); *see also State v. Kennedy,* 290 Or. 493, 624 P.2d 99 (1981). The record shows Mr. Jensen: (1) cooperated with Trooper Richmond during and after his arrest; (2) orally consented to the search twice before actually signing the consent form; and (3) was read directly from the consent form that he need not consent to the search of his car.

Additionally, the trial court found Mr. Jensen: (1) was fully advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966); (2) was not a particularly young man; (3) had prior experience with the police; and (4) was not of low intelligence. These findings are not challenged on appeal and are verities. *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981). Consequently, we conclude the consent to search the car was voluntarily given by Mr. Jensen. *See United States v. Hall,* 724 F.2d 1055, 1060 (2d Cir. 1983); *United States v. Compton,* 704 F.2d 739, 741 (5th Cir. 1983); *but see United States v. Robinson,* 690 F.2d 869, 874–75 (11th Cir. 1982). *See generally* Annot., *Validity of Consent To Search Given by One in Custody of Officers* § 18, 9 A.L.R.3d 858 (1966 & Supp. 1985).

Notwithstanding, Mr. Jensen correctly contends although his consent was voluntary, the State must also demonstrate his consent was not obtained by the exploitation of the prior illegal search.[1] *See Taylor v. Alabama,* 457

---

[1]Determining whether a consent to search is voluntary is only the initial inquiry in the determination of the propriety of the search. The next question becomes whether the defendant's inculpatory action (here, the consent to search), although voluntary, was obtained by the exploitation of a prior illegality (here, the illegal search) such that the constitutional safeguards of the Fourth Amendment and article 1, section 7 of our constitution require exclusion of the evidence. *See Taylor v. Alabama,* 457 U.S. 687, 690, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982);

U.S. 687, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982); *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975); *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Chrisman,* 94 Wn.2d 711, 619 P.2d 971 (1980), *rev'd on other grounds,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982). Here, it is clear that Officer Richmond's interest in searching the car arose only after illegally discovering the marijuana. However, *Wong Sun,* 371 U.S. at 487–88, provides:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

In *Brown, Dunaway,* and *Taylor,* the United States Supreme Court identified several factors useful in determining whether a defendant's confession was tainted by a prior illegal arrest. These factors, which are equally applicable in determining whether a voluntary consent to search was sufficiently attenuated from a prior illegal search, are: (1) the temporal proximity of the illegal search and subsequent consent; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the official misconduct; and (4) the giving of *Miranda* warnings. *Taylor,* 457 U.S. at 690. In applying these factors, we conclude Mr. Jensen's consent was not the fruit of the illegal search.

First, although the consent to search was given within 2 hours of the prior illegal search, the proximity in time alone is not determinative. *See United States v. Berry,* 670 F.2d 583, 605 (5th Cir. 1982). Second, there were substantial intervening circumstances; a crucial fact was that Mr.

---

*State v. Byers,* 88 Wn.2d 1, 7, 559 P.2d 1334 (1977), *overruled in part in State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984).

Jensen was advised after the illegal search and prior to his signing of the consent form that he could refuse to consent. In addition, in the intervening period, Mr. Jensen orally consented twice to the search. He also was allowed to call his sister, although she apparently did not answer. *Cf. Berry,* at 605.

Third, the record indicates Mr. Jensen was not subjected to intimidating police misconduct. He was legally arrested. Trooper Richmond did nothing to frighten or intimidate Mr. Jensen and, in fact, the relationship between the two appears to have been cooperative and friendly. Mr. Jensen does not contend he "gave up" and consented because he believed it was useless to resist after discovery of the marijuana.[2] Lastly, although not of itself sufficient to purge the taint, Trooper Richmond advised Mr. Jensen of his *Miranda* rights immediately after discovering the marijuana. Viewing all these factors as a whole, we hold Mr. Jensen's consent to search was not tainted by the prior illegal search and, therefore, his consent to search was valid.

The final question is whether Trooper Richmond's search of the jacket, found on the backseat of the car, exceeded the scope of consent given by Mr. Jensen. A consensual search may go no further than the limits for which the consent was given. *State v. Johnson,* 71 Wn.2d 239, 243–44, 427 P.2d 705 (1967); *McNear v. Rhay,* 65 Wn.2d 530, 538–40, 398 P.2d 732 (1965); *State v. Cuzick,* 21 Wn. App. 501, 505, 585 P.2d 485 (1978); 2 W. LaFave, *supra,* §

---

[2]The dissent's position regarding Mr. Jensen's mental state at the time he consented to the search, *i.e.,* "he believed it was useless to resist", is not supported by the record. He did not, as in *State v. Byers,* 88 Wn.2d 1, 9, 559 P.2d 1334 (1977), indicate he "thought [he was] had" by discovery of the marijuana; nor was he illegally arrested. He does not contend the trooper was threatening, hostile, or intimidating. *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975) is distinguishable from the circumstances here; there, the police broke into the defendant's house, pointed guns at him, and illegally arrested him. Mr. Jensen does not contend he was exploited into giving his consent to search the car; indeed, he never contended he consented because it was "useless to resist" anywhere in his brief; such an argument is the product of this court's review. Although one cannot disagree with the legal principles expounded by the dissent, neither the facts nor Mr. Jensen's contentions support it.

8.1(c), at 624. LaFave, at 624, provides:

> When the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have been given by the consent. *It is thus important to take account of any express or implied limitations or qualifications attending that consent which establish the permissible scope of the search* in terms of such matters as time, duration, area, or intensity.

(Footnote omitted. Italics ours.) LaFave, at 625, continues:

> Assuming . . . that a general and unqualified consent was given, then the boundaries of the place referred to mark the outer physical limits of the authorized search. . . . Somewhat more difficult is the question of whether such a general consent permits the opening of closed but unlocked containers found in the place as to which consent was given. Ordinarily, it would appear that the answer is yes, particularly if the police have indicated they are searching for a small object which might be concealed in such a container.

(Footnotes omitted.)

Here, the record indicates Mr. Jensen imposed no express or implied limitations on the scope of the search. The consent to search form gave Trooper Richmond permission to "conduct a complete search of the vehicle". The consent form, likewise, indicated the purpose of the search was "to take from such vehicle any letters, papers, materials or other property which they believe to be of evidentiary value". This evidence is sufficient to demonstrate that Mr. Jensen consented to the search for evidence of the size and nature which could reasonably be found in a jacket pocket. Likewise, he never expressly or implicitly withheld consent to search his personal belongings in the car. Although the record is silent on this point, presumably his suitcase was elsewhere at the time of the search and was never searched.

Mr. Jensen's reliance on *State v. Cole,* 31 Wn. App. 501, 643 P.2d 675 (1982) is misplaced. There, the suitcases searched did not belong to the defendant who, therefore, could not consent to their search. The court did not err in concluding the scope of Mr. Jensen's consent permitted

Trooper Richmond to search his coat pockets.

The conviction is affirmed.

GREEN, C.J., concurs.

McINTURFF, J. (dissenting)—I respectfully dissent because the State failed to show Mr. Jensen's consent was secured "by means sufficiently distinguishable to be purged of the primary taint" of the initial, illegal search which resulted in the seizure of the marijuana. *State v. Byers,* 88 Wn.2d 1, 8, 559 P.2d 1334 (1977) (quoting from *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)), *overruled in part in State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984).

The purpose of the rule excluding tainted evidence is to promote respect for the Fourth Amendment by keeping out evidence obtained in exploitation of an illegal arrest or search. *Wong Sun,* at 485. That purpose is not served where the causation factor of the illegality is so weak, or has been so attenuated as not to have been an operative factor in causing or bringing about the confession. *State v. Vangen,* 72 Wn.2d 548, 555, 433 P.2d 691 (1967). Here, however, the causal chain is short and unbroken. As in *Byers,* there was no significant intervening event or considerable lapse of time between the seizure and the consent.[3] Thus, "[t]here . . . [is] no basis for segregating the two, no justification for upholding the one while denouncing the other." *Byers,* at 8.

The crux of my disagreement with the majority is its

---

[3]An example of a significant intervening event is found in *Wong Sun,* at 491, where the defendant was released on his own recognizance between his illegal arrest and his confession and several days elapsed between the two. *See also United States v. Owen,* 492 F.2d 1100, 1107 (5th Cir. 1974) (defendant released on bail, returned voluntarily 4 days later to give statement); *Pennsylvania ex rel. Craig v. Maroney,* 348 F.2d 22, 29 (3d Cir. 1965) (5 days elapsed between arrest and confession and the defendant spoke with his attorney before the confession); *State v. Vangen, supra* at 555 (defendant was confronted with legally seized evidence against him after first refusing to confess). No comparable events occurred between the illegal search and Mr. Jensen's consent here.

holding there were substantial intervening circumstances between the illegal search and Mr. Jensen's consent. The majority relies on the facts that (1) Mr. Jensen was advised that he could refuse to consent, and (2) he also was allowed to call his sister, although she apparently did not answer. While the fact Mr. Jensen was advised of his *Miranda* rights is important, it is not the only factor the court considers in these situations. *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, 2261 (1975). In *Byers* and *Brown,* the defendants' convictions were reversed on the ground that their confessions were tainted although made following *Miranda* warnings which advised them they had the right to refuse to talk to the police.

In both *Byers* and *Brown,* the courts relied on the facts that the defendants confessed within 2 hours of their illegal arrests and that no significant events intervened between the arrests and the confessions. *Byers,* at 9; *Brown,* at 604. The court in *Byers* also noted at page 9 that the defendants confessed because they thought they were "'had'", *i.e.,* they were implicated by the evidence discovered as a result of the illegal arrest.

Here, Mr. Jensen orally consented to the search of his car immediately following the discovery of the marijuana, while en route to the Grant County Jail. His written consent to the search was obtained less than 2 hours later. During this period, he did not have any contact with friends, relatives or counsel—in short, with anyone other than law enforcement personnel. Although Mr. Jensen does not specifically argue he consented because he believed it was useless to resist after discovery of the marijuana, such a conclusion is logical given the fact that he was in custody and knew his vehicle was in the control of the police.

Finally, the majority observes that Mr. Jensen was legally arrested and Trooper Richmond did nothing to frighten or intimidate him. These facts support a finding that Mr. Jensen's consent was voluntary under the Fifth Amendment, but they are immaterial to the issue of whether the consent was fruit of the illegal search and,

thus, was obtained in violation of the Fourth Amendment. The purpose of the exclusionary rule, promoting respect for the Fourth Amendment, would be eroded if law enforcement personnel could cure their illegal conduct by properly handling other aspects of a case.

In view of the foregoing, I would hold Mr. Jensen's consent was tainted by the illegal search. The illegal action of the officer commenced an unbroken chain of events leading to Mr. Jensen's conviction. If we allow the fruit of this illegal action to be used as evidence, then the Fourth Amendment is a collection of words only and has no practical effect.

Review denied by Supreme Court October 30, 1986.