[No. 15034-4-II.   Division Two.   June 17, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. RUDELL
CANTRELL, *Appellant.*

341

*John M. Wolfe* of *Pacific County Public Defense Office,* for appellant.

*H. Steward Menefee, Prosecuting Attorney for Grays Harbor County,* and *David B. Trefry, Deputy,* for respondent.

SWANSON, J.* — Rudell Cantrell appeals his Pacific County Superior Court convictions for felony possession of methamphetamine, a controlled substance, and misdemeanor possession of marijuana. He challenges the vehicle searches that produced the evidence used against him. We reverse.

On June 28, 1990, Rudell Cantrell and his passenger, Ingo Schweitzer, were driving along Highway 101 in Pacific County when State Trooper Kershaw stopped their vehicle for speeding. The initial traffic stop is not challenged. The car was owned by Schweitzer's father, but Cantrell had permission to drive it because Schweitzer was unlicensed. Trooper Kershaw wrote Cantrell a speeding ticket and ascertained the car's

---

*Judge Herbert A. Swanson is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

ownership. He then asked the two men if they had any contraband or open containers of alcohol inside the car. They replied that they had alcohol, but it was in closed containers.

Seeking to confirm that fact, Kershaw asked Schweitzer if he would consent to a search of the vehicle.[1] Kershaw handed Schweitzer a card on which was written a consent to search form. The card said, in part, "You have the right to refuse permission to make such search and require that the officer obtain a search warrant." Schweitzer read the form and signed it, assuming, as he testified, that the trooper could get a search warrant anyway, so he might as well permit the search and get it over with. Armed with that consent, the trooper "looked through the vehicle" and located a marijuana pipe in the ashtray. He asked whose pipe it was, and both men stated that "a guy down at the beach" had given it to them. He placed both of them under arrest for possession of marijuana and possession of drug paraphernalia.[2]

Kershaw read the arrestees their *Miranda* rights at that point and then asked Cantrell if there was "anything else" in the vehicle. Cantrell replied that "there was some pot underneath the seat in a clear plastic container." Kershaw looked and found a container of marijuana. He put the men into his patrol car and searched the vehicle incident to the arrest. That additional search produced a baggie of a "white, powdery substance" that Cantrell identified as "meth" (methamphetamine) belonging to him.

The State charged Cantrell with possession of the marijuana and the methamphetamine. He moved twice before trial to suppress the evidence, and the motions were denied on the grounds that the searches were consensual and were incident to a lawful arrest. Cantrell was convicted by a jury and filed this appeal.

---

[1] Trooper Kershaw testified that it was his standard procedure, in "probably 50 to 75 percent of the vehicles I stop, . . . to ask for a consent to search the vehicle."

[2] The record indicates that the pipe contained only burnt marijuana residue, but in an amount sufficient to convince the trooper he had grounds for arrest.

Cantrell first argues that he and Schweitzer were unlawfully detained by Trooper Kershaw, and that the unlawful detention taints the searches and mandates suppression of the evidence. He relies on the factually similar case of *State v. Tijerina*, 61 Wn. App. 626, 811 P.2d 241, *review denied*, 118 Wn.2d 1007 (1991). In *Tijerina*, state troopers made a traffic stop of a car, determined that the driver had a current license and vehicle registration, and decided not to issue a ticket. A trooper testified that both occupants of the vehicle were Hispanic, that he could see small bars of motel soap inside the car, and that he knew Hispanics were heavily involved in selling narcotics at motels in the Spokane area. He asked the driver if there were any guns or drugs in the car, and the driver said there were not. The trooper then asked if he could look in the vehicle and the driver said, "Go ahead." After searching the interior, the trooper retrieved the keys to the car, approached the trunk, and asked if there was anything in the trunk. The driver replied, "just a case of beer." Aware that the driver was under the legal drinking age, the trooper opened the trunk and observed the case of empty beer bottles. He noticed a folded newspaper, which he picked up. Finding it heavy, he unfolded it and discovered 10 wrapped bags of cocaine inside. 61 Wn. App. at 628.

Division Three of this court held in *Tijerina* that the evidence should have been suppressed. The court stated:

> The stop of an automobile is a seizure of its occupants and must therefore be reasonable. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). In evaluating investigative stops, the court must determine: (1) Was the initial interference with the suspect's freedom of movement justified at its inception? (2) Was it reasonably related in scope to the circumstances which justified the interference in the first place? *Terry v. Ohio*, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Williams*, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984). In determining the proper scope of the intrusion, the court considers (1) the purpose of the stop, (2) the amount of physical intrusion, and (3) the length of time the suspect is detained. *Williams*, at 740.
>
> Here, the initial stop of Mr. Tijerina for crossing over the fog line was justified. The sergeant's request to verify Mr. Tijer-

ina's license and registration was reasonably related to the purpose of the stop. However, once the sergeant made the decision not to issue a citation and returned the driver's license and registration to Mr. Tijerina, *any further detention had to be based on articulable facts from which the sergeant could reasonably suspect criminal activity. State v. Gonzales,* 46 Wn. App. 388, 394, 731 P.2d 1101 (1986).

(Italics ours.) 61 Wn. App. at 628-29. The court concluded in *Tijerina* that the sergeant's observation of the "innocuous" bars of soap and his knowledge that some Hispanics dealt drugs from Spokane hotels did not create a reasonable suspicion that Tijerina was engaged in drug trafficking. Thus, the further investigation after the troopers decided not to issue a ticket was improper unless the driver's consent to the search sufficiently purged the taint of the illegal detention. 61 Wn. App. at 629 (citing *State v. Gonzales,* 46 Wn. App. 388, 399, 731 P.2d 1101 (1986)).

■ To this point, our case is essentially indistinguishable from *Tijerina*. Here, as in *Tijerina*, the initial traffic stop was justified. Once the purpose of the stop was fulfilled by issuance of a speeding ticket, however, the trooper had no right to detain the car's occupants further absent articulable facts giving rise to a reasonable suspicion of criminal activity. As in *Tijerina*, the trooper failed to provide such facts. His unexplained desire to start searching the car for containers of alcohol is, if anything, even less defensible than the trooper's unreasonable suspicion in *Tijerina* that the presence of motel soap in a vehicle occupied by Hispanics indicated the presence of drugs. Therefore, our inquiry in this case shifts to whether Schweitzer's consent to search the car purged the taint of what had become an illegal detention.

■ Generally, a consent to search must be voluntary, *i.e.,* "informed and given freely and voluntarily.' " *State v. Flowers,* 57 Wn. App. 636, 645, 789 P.2d 333, *review denied,* 115 Wn.2d 1009 (1990) (quoting *State v. Mak,* 105 Wn.2d 692, 713, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986)). The voluntariness of consent is a factual question on which the

State has the burden of proof by clear and convincing evidence; relevant factors include whether *Miranda* warnings were first given, the degree of education and intelligence of the consenting person, and whether the person was advised of his right to withhold consent. *Flowers*, at 645. There is no question here that Schweitzer was informed beforehand of his right not to consent and, as a 23-year-old college student, was intelligent enough to be able to give his consent. He was not previously given his *Miranda* warnings, but that omission by itself does not negate consent. *State v. Lyons*, 76 Wn.2d 343, 458 P.2d 30 (1969); *Flowers*, at 645-46.

■ Nevertheless, the consent given by Schweitzer was not binding on Cantrell in this case. The record shows that Schweitzer's father owned the car in which they were traveling, and that Cantrell was its driver. Each, therefore, had a basis for asserting control over the vehicle and roughly equal ability to consent to a search of it. In such a situation, where two or more persons have "common authority" over the place searched, " 'the consent of one who possesses common authority over premises or effects is valid as against the *absent*, nonconsenting person with whom that authority is shared.' " *State v. Leach*, 113 Wn.2d 735, 739, 782 P.2d 1035 (1989) (quoting *United States v. Matlock*, 415 U.S. 164, 170, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974)). On the other hand, when *both* persons possessing approximately equal control are present, the police must obtain the consent of both before searching without a warrant. *Leach*, 113 Wn.2d at 744; *State v. Birdsong*, 66 Wn. App. 534, 832 P.2d 533 (1992). As stated in *Leach*, 113 Wn.2d at 740, "one's ability to control the premises is not subordinated to a joint occupant *when one remains on the premises and is able to object to access by others*."

In this case, both Cantrell and Schweitzer were present at all times, but Trooper Kershaw asked only Schweitzer to consent to a search. His failure to obtain Cantrell's consent as well invalidates the search under the rule adopted in *Leach*.

■ Even if consent is given voluntarily and is binding, a prior illegal search or arrest may taint the consent and render it invalid; in other words, the police may not exploit the prior illegal detention. *State v. Jensen*, 44 Wn. App. 485, 489, 723 P.2d 443, *review denied*, 107 Wn.2d 1012 (1986); Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411, 554 (1988). The *Tijerina* court listed the following factors as relevant to determining whether a voluntary consent to search sufficiently overcame the illegal detention: (1) the elapsed time between the detention and the subsequent consent, (2) the presence of significant intervening circumstances, (3) the "purpose and flagrancy" of the official's conduct, and (4) whether *Miranda* warnings were given. 61 Wn. App. at 630 (citing *Taylor v. Alabama*, 457 U.S. 687, 690, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982)); *Jensen*, 44 Wn. App. at 490. *Accord, Gonzales*, 46 Wn. App. at 397-99.

In *Tijerina*, because (a) there were no intervening circumstances between the illegal detention and the consent to search, (b) the purpose of the stop was satisfied when the sergeant decided not to issue a citation and his ensuing conduct was based on unjustified suspicion, and (c) no *Miranda* warnings preceded the consent, the court held that the consent would not have been obtained but for the illegal detention. 61 Wn. App. at 630. The same is true here. The trooper proceeded directly from writing the ticket, which completed the purpose of the stop, to asking for consent to search the car to see if it contained any illegal alcohol. His desire to search was not based on a reasonable suspicion of criminal activity. He did not give the *Miranda* warnings before seeking consent to search. Thus, we conclude that the consent was a direct result of the illegal detention that followed the traffic stop, and was invalid.

We distinguish this case from others in which the consent to search was found to be valid. In *Gonzales*, the police did not exploit their illegal arrest. Their misconduct in effecting the arrest was not flagrant, the arrestee spontaneously in-

vited them to search his home, and he received his *Miranda* rights. 46 Wn. App. at 398-99. In *Jensen*, the police did not exploit their prior illegal search. They read the arrestee his *Miranda* warnings before obtaining consent; more than an hour passed before he gave consent, during which he was made aware he could refuse consent and was allowed a telephone call; and his relationship with the police during that time was "cooperative and friendly", rather than marked by intimidation. 44 Wn. App. at 490-91. In *Flowers*, the consent was not preceded by any illegal police conduct; the issue was purely the voluntariness of the arrestee's consent. 57 Wn. App. at 645-47.

The trial court also found, as additional justification for admitting the methamphetamine and marijuana into evidence against Cantrell, that the trooper's search was lawful as incident to arrest under *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). *Stroud* announced a bright line rule: "During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence." 106 Wn.2d at 152. The State relies on *Stroud* in arguing that the trooper's search was merely incident to the arrest already made of both Cantrell and Schweitzer. This reliance is misplaced.

██ *Stroud* does not authorize the searches in this case. In the first place, *Stroud* authorized a limited vehicle search incident to a custodial arrest. *See State v. Johnson*, 65 Wn. App. 716, 829 P.2d 796 (1992). But a custodial arrest is not permitted for a minor traffic violation such as speeding if the defendant signs the promise to appear contained in the citation. *State v. Hehman*, 90 Wn.2d 45, 578 P.2d 527 (1978); RCW 46.64.015. Therefore, after Cantrell signed the speeding ticket, Trooper Kershaw lacked the authority to take him into custody, or to search him or the car incident to arrest. *State v. Feller*, 60 Wn. App. 678, 806 P.2d 776, *review denied*, 117 Wn.2d 1005 (1991); *State v. Watson*, 56 Wn. App.

665, 784 P.2d 1294, *review denied*, 114 Wn.2d 1028 (1990). The second problem with applying *Stroud* in this case is that the searches that uncovered the marijuana and methamphetamine took place only after the trooper had obtained an invalid consent. Consequently, the product of the ensuing search is inadmissible as "fruit of the poisonous tree." *See Jensen*, 44 Wn. App. at 493 (citing *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Byers*, 88 Wn.2d 1, 8, 559 P.2d 1334 (1977), *overruled on other grounds in State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984)); Utter, *supra* at 603-08.

■ In the alternative, the State argues that the encounter between Trooper Kershaw and the two occupants of the car did not amount to a seizure. "[N]ot every public street encounter between a citizen and the police rises to the stature of a seizure." *State v. Belanger*, 36 Wn. App. 818, 820, 677 P.2d 781 (1984). Although the initial stop of the car was a seizure, *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986), the State argues it terminated when Cantrell signed the speeding ticket, and that the trooper's subsequent request of Schweitzer to search the car did not constitute another seizure. This argument is beside the point. As we explained above, the initial traffic stop was a lawful seizure, but the trooper continued to detain the two occupants for further investigation in the absence of articulable facts giving rise to a reasonable suspicion of criminal activity. That was improper, and it impermissibly tainted the consent the trooper elicited from Schweitzer by continuing his questioning. Absent that consent, the trooper could not have made his search and discovered the evidence.

Reversed.

PETRICH and WIELAND, JJ. Pro Tem., concur.

Review granted at 122 Wn.2d 1022 (1993).