FILED
COURT OF APPEALS
DIVISION II

2015 MAY -5 AM 9: 28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45766-1-II |
| Respondent, | |
| v. | |
| DEBRA L. DOERING, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Debra Doering appeals her conviction for one count of unlawful possession of methamphetamine. She argues that the trial court erred by denying her motion to suppress evidence because police officers unlawfully seized her twice, and that these illegal seizures invalidated her eventual consent to the search of the vehicle. We find no error and affirm.

## FACTS

Two officers for the Washington Department of Fish and Wildlife stopped a car trespassing at night on a private road. Thomas Tobey was driving the car, and Debra Doering was a passenger. During this stop, the officers saw suspected methamphetamine and a pipe in the vehicle. The officers obtained Doering's and Tobey's consent to search the vehicle, and retrieved the methamphetamine and pipe. Doering acknowledged that the drugs were hers.

The State charged Doering with one count of unlawful possession of a controlled substance (methamphetamine). Doering moved to suppress the methamphetamine in a CrR 3.6 hearing.

At the CrR 3.6 hearing, Officer Smith testified to the following: he and Officer Jewett, both officers for the Department of Fish and Wildlife, patrolled private logging roads owned by Green Diamond Resource Company to help enforce nighttime closure of those roads to prevent illegal hunting. The roads are closed during hours of darkness, and signs to this effect are posted at all entrances to the roads. The officers stopped all vehicles driving on the roads during hours of darkness. During floods, one of these private roads, Green Diamond 800 Road, may be used as an evacuation route. When there is an evacuation in effect, it is legal to drive on Green Diamond 800, even in darkness. On the night in question, March 16, 2013, the evacuation route signs indicated that the evacuation route was open, although other signs still indicated that Green Diamond 800 was closed during darkness. The Green Diamond road closure signs did not say anything about evacuation routes. There was no flood on the night in question.

Officer Smith testified that the officers noticed a vehicle traveling on the road around 11:00 PM, long after darkness. The officers stopped the vehicle, which Tobey was driving and in which Doering was a passenger. The officers noticed "a bunch of tools and miscellaneous items in the back of the vehicle." Verbatim Report of Proceedings (VRP) at 6. These items included sharp objects, hammers, and other kinds of tools that could be used as weapons. Officer Smith testified that the officers stopped the vehicle because the occupants were trespassing on Green Diamond roads during hours of darkness. The officers suspected Doering of trespassing based

on the fact that Green Diamond closes all their roads to motor vehicle access at night and because Doering was in the vehicle accessing Green Diamond's property.

Officer Smith testified that after stopping the vehicle for trespassing, the officers ran checks on both Tobey and Doering, and determined that Tobey's license was suspended. The checks also revealed that Doering had a valid license.[1] The officers arranged for Doering to drive Tobey's vehicle off the property.

The officers found a shotgun in the vehicle near Tobey. They seized it to make sure it was unloaded, and removed Tobey from the vehicle to frisk him for other weapons.

Officer Smith saw Doering reach back into the vehicle's back seat while the officers were frisking Tobey. Officer Smith asked Doering to lean forward so he could see her hands, because he was concerned Doering might pose a threat given that there were tools, sharp objects, and an aggressive pit bull in the back seat. Then, Officer Smith came to the passenger side of the vehicle, asked Doering to step out, and frisked her for weapons. He testified that he did this because he wasn't sure what she was reaching "back to the back of the vehicle" for, and because "typically there's not just one weapon when I run into people in the woods." VRP at 8. Officer Smith testified that he believed Doering might be armed and dangerous because, while the officers were frisking Tobey, she reached back to the area of the vehicle where there were tools and sharp objects.

The frisk revealed no weapons, and Officer Smith told Doering she was free to drive the vehicle away. But as Doering reentered the vehicle, this time on the driver's side, Officer Smith

---

[1] Doering did not have her driver's license, so she gave the officers her name and date of birth. The officers were able to determine that Doering had a valid driver's license.

3

saw that Doering didn't just sit in the vehicle, but reached across the interior. Officer Smith used his flashlight to see what she was reaching for, and saw a pipe that he, through his training, recognized to be something that would be used to inhale methamphetamines. VRP at 8-9. Then, Officer Smith ordered Doering out of the vehicle and detained her to prevent her from destroying the evidence that he had seen. Having seen the pipe, Officer Smith suspected that Doering possessed methamphetamine.

Officer Smith looked through the window of the vehicle and saw a one-inch "baggie" behind the passenger's seat that had a crystalline substance in it that he believed was methamphetamine. He then walked over to Doering and Tobey and asked if there were any drugs in the vehicle, which both of them denied.

The officers gave Doering and Tobey their *Miranda*[2] warnings, then asked for consent to search the vehicle. Doering and Tobey each signed consent to search forms. A vehicle search revealed a plastic "baggie" full of a crystal substance and a glass pipe that field-tested positive for methamphetamines.

The trial court denied Doering's motion to suppress the evidence, and entered findings of fact and conclusions of law. The trial court made the following relevant findings of fact:

> Finding of fact 1: Officer Chris Smith and Officer Matt Jewett conducted a stop of Tobey Tobey's vehicle on March 16, 2013 after dark on private property belonging to Green Diamond. The Defendant was a passenger in the vehicle. The stop occurred on private property that was closed during the hours of darkness.
> . . . .
>
> Finding of fact 3: During the course of the stop, a firearm was observed in the vehicle.
> . . . .

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).

4

Finding of fact 5: Before exiting the passenger side of the vehicle, the Defendant made furtive movements and reached into the back of the vehicle behind the passenger seat. Officer Smith requested that she show him her hands and prompted her to exit the vehicle. The Defendant exited the vehicle from the passenger side, she was then frisked by Officer Smith for weapons.

. . . .

Finding of fact 7: The Defendant and Tobey Tobey consented to a search of the vehicle orally and in writing after receiving Miranda warnings and advisement of their right to refuse consent both verbally and in writing.

CP at 45, 46.

Doering moved for reconsideration of her CrR 3.6 motion on the grounds that the trial court did not consider whether the investigative stop had concluded before the consent search. The court denied this motion.

At trial, Officers Smith and Jewett testified to the same facts as those from the CrR 3.6 hearing. The jury convicted Doering of one count of unlawful possession of methamphetamine. Doering appeals.

## ANALYSIS

### I. FINDINGS OF FACT

Doering assigns error to several of the trial court's CrR 3.6 findings of fact. But Doering's brief devotes argument to only a portion of finding of fact 1. Regarding the other findings, Doering does not cite the record to support her assignments, and cites no authority. We hold that substantial evidence supports finding of fact 1. We consider the remaining findings of fact verities.[3]

---

[3] *See State v. Motherwell*, 114 Wn.2d 353, 358 n. 3, 788 P.2d 1066 (1990).

We review the findings of fact entered following a suppression hearing for substantial evidence in the record. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Substantial evidence is evidence in sufficient quantity to persuade a fair-minded person of the truth of the finding. *State v. Barnes*, 158 Wn. App. 602, 609, 243 P.3d 165 (2010). We treat any unchallenged findings as verities on appeal. *Hill*, 123 Wn.2d at 644.

Doering challenges finding of fact 1, arguing that insufficient evidence supports the finding that the road was closed. Doering argues that the trial court's "blanket finding" that the road was closed at night is "unsupported by the evidence and must be vacated." Br. of Appellant at 9 n. 4. We disagree.

Officer Smith testified at the CrR 3.6 hearing that the officers stopped Tobey's vehicle after dark on Green Diamond's property, which was generally closed during hours of darkness, and that Doering was a passenger. Signs indicated that the road was closed during hours of darkness. Other signs indicated that the road was open as an evacuation route during floods, but there was no flood on the night in question. Thus, substantial evidence supports finding of fact 1, including the finding that the road was "closed during hours of darkness."

## II. SEIZURES

Doering challenges conclusions of law 2 and 3, arguing that the officers unlawfully seized her two times without reasonable suspicion of criminal activity. We disagree.

We decide de novo whether the trial court's findings of fact support its conclusions of law. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). We review de novo whether a warrantless seizure violates the constitution. *State v. Diluzio*, 162 Wn. App. 585, 590, 254 P.3d 218 (2011).

6

A.    *Seizure of Vehicle*

Doering challenges conclusion of law 2, arguing that the officers unlawfully seized her by stopping the vehicle without reasonable suspicion that she was trespassing because she, as a passenger in the vehicle, did not have the power to commit the actus reus necessary for criminal trespass. The State concedes that Doering was seized, but argues that the seizure was lawful because the officers observed Doering committing trespassing. We hold that the seizure was lawful because the officers had a reasonable suspicion based on articulable facts that Doering was trespassing.

Conclusion of law 2 provides: "Officer Smith had a reasonable and articulable suspicion that the Defendant and Thomas Tobey were criminally trespassing on private property within Officer Smith's sight. Further, Officer Smith had probable cause[4] to arrest the driver and Defendant of criminal trespass in the second degree. Therefore, the stop of the vehicle was lawful." CP at 46-47.

A police officer may conduct an investigative stop that is based on "specific and articulable facts which, taken together with rational inferences from those facts," give rise to reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). It is the State's burden to prove reasonableness. *State v. Cardenas-Muratalla*, 179 Wn. App. 307, 309, 319 P.3d 811 (2014).

---

[4] Although the trial court concluded that Officer Smith had probable cause to arrest Tobey and Doering for trespass, only the lesser standard of reasonable suspicion was required for him to stop the vehicle. *State v. Arreola*, 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012). And on appeal, Doering challenges the stop based on reasonable suspicion, not probable cause. We consider only whether the officers had reasonable suspicion to stop the vehicle.

When reviewing the lawfulness of an investigative stop, we evaluate the totality of the circumstances presented to the police officer. *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010) Those circumstances may include the police officer's training and experience. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991) (plurality opinion). Second degree criminal trespass occurs when a person "knowingly enters or remains unlawfully in or upon premises of another" other than a building. RCW 9A.52.080.

Conclusion of law 2 flows from the trial court's finding of fact 1, that Tobey and Doering were driving after dark on private roads that are generally closed after dark. Because finding of fact 1, supported by substantial evidence, establishes that officers witnessed Tobey and Doering traveling on private roads that were closed after dark, the officers had reasonable suspicion based on articulable facts to believe that Tobey *and Doering* were committing second degree criminal trespass. RCW 9A.52.080 clearly provides that trespass occurs when someone knowingly enters or remains on the premises of another. Doering and Tobey were clearly on Green Diamond's property without permission, and the officers had reasonable suspicion that Doering had committed trespass.

Doering also argues that the officers did not have reasonable suspicion to seize her because, as a passenger in the car, she could not have performed the actus reus necessary for trespass. But the officers were not required to rule out a potential actus reus argument before forming a reasonable suspicion that Doering was trespassing. All that is needed for a lawful *Terry* stop is a reasonable suspicion of criminal activity; "an actual violation is not necessary for a valid stop." *State v. Snapp*, 174 Wn.2d 177, 198, 275 P.3d 289 (2012). Thus, the trial court's conclusion of law 2 flows from its finding of fact 1, and the trial court did not err by concluding

that Doering was not unlawfully seized when the officers stopped the vehicle.[5] *See State v. Arreola*, 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012); *Snapp*, 174 Wn.2d at 197-98.

B.      *Weapons Frisk*

Doering challenges conclusion of law 3, arguing that the frisk for weapons constituted another unlawful seizure that vitiated her later consent to search the vehicle. The findings of fact support conclusion of law 3, because Officer Smith frisked Doering due to concerns for officer safety generated by Doering's own actions.

Conclusion of law 3 provides: "During the course of the stop, officer [sic] Smith had articulable concerns for officer safety (i.e.[,] he had observed a firearm in the vehicle and the Defendant made furtive movements), and therefore he had a legal basis to frisk the Defendant for weapons." CP at 47.

During an investigation of possible criminal activity, a police officer is entitled to protection, and may conduct a carefully limited search of the outer clothing of a person in an attempt to discover weapons that might be used to assault the officer. *Terry*, 392 U.S. at 30. A police officer is permitted to stop and frisk an individual when the officer has an objectively reasonable belief, based on specific and articulable facts, that the individual could be armed and dangerous. *State v. Russell*, 180 Wn.2d 860, 868, 330 P.3d 151 (2014); *State v. Horrace*, 144 Wn. 2d 386, 400, 28 P.3d 753 (2001).

---

[5] Doering argues that the officers further seized her when they requested her name and date of birth "without any reason to believe that she was engaged in criminal activity." Br. of Appellant at 10. We decline to reach this argument, because Doering raises it for the first time on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

Here, Officer Smith lawfully frisked Doering. Conclusion of law 3 flows from findings of fact 3 and 5, providing that Officer Smith had articulable concerns for his own safety based on Doering's furtive movements and the presence of other firearm in the vehicle. These articulable concerns were based on Doering's own behavior—the fact that she reached into the rear of the vehicle towards the sharp objects and pit bull during Tobey's weapons frisk. Thus, Officer Smith had an objectively reasonable belief, based on specific and articulable facts, that Doering could have been armed and dangerous. *Russell*, 180 Wn.2d at 868.. The "pat-down" for weapons did not violate Doering's constitutional rights.

### III. CONSENT

Doering challenges conclusions of law 5 and 6, arguing that the foregoing unlawful seizures invalidated her consent for the officers to search the vehicle. Because we hold that the officers did not at any time unlawfully seize or search Doering, we hold that her consent was not invalidated.[6]

Conclusion of law 5 provides: "The driver (Tobey Thomas [sic]) and the Defendant freely and voluntarily consented to a search of their vehicle." CP at 47. Conclusion of law 6

---

[6] We hold that Doering waived several other assignments of error by failing to support them with argument in her opening brief. RAP 10.3(6); *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). Doering assigns error to all of conclusion of law 6. The first sentence of conclusion of law 6 provides: "The detention of the Defendant was brief, the officer safety frisk was limited in scope, and the subsequent search of the vehicle was brief, limited in scope, and within the scope of the consent provided." CP at 47. Doering does not argue that the duration of the detention, the scope of the weapons frisk, or the scope of the vehicle search violated her constitutional rights. Doering also challenges conclusions of law 4 and 7, but Doering does not provide argument about these conclusions in her argument. We deem these assignments of error waived.

provides in relevant part: "Moreover, both the driver and the Defendant were authorized to give consent." CP at 47.

Consent is an exception to the warrant requirement, and the State bears the burden of demonstrating that consent was voluntarily given. *State v. Walker*, 136 Wn.2d 678, 682, 965 P.2d 1079 (1998). If officers have already unlawfully seized or searched an individual, that individual's subsequent consent to further searches may be invalidated. *State v. Cantrell*, 70 Wn. App. 340, 346, 853 P.2d 479 (1993), *overruled in part on other grounds*, 124 Wn.2d 183, 875 P.2d 1208 (1994); *State v. Coyne*, 99 Wn. App. 566, 574, 995 P.2d 78 (2000) (outlining the four nonexclusive factors courts use to consider whether a previous unlawful detention invalidated subsequent consent to search). When two people are present in a vehicle and they appear to exercise approximately equal control over the vehicle, then both occupants have authority to consent, and officers must obtain consent from both occupants before searching the vehicle. *See* Cantrell, 124 Wn.2d at 188.

Both conclusions of law 5 and 6 flow from the trial court's finding of fact 7, that Tobey and Doering consented in writing to the search and were *Mirandized*. And as discussed above, we hold that none of the officers' actions before seeking consent constituted an unlawful search or seizure. Thus, because we hold that none of the foregoing searches and seizures was illegal, nothing vitiated Doering's consent.

11

No. 45766-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.